**MARK PRODUCTS U.S., INC.,**
Appellant,

v.

**INTERFIRST BANK HOUSTON, N.A.,**
et al., Appellees.

No. A14–87–118–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 13, 1987.
Rehearing Denied Sept. 10, 1987.

Tom Bayko, Jack G. Carnegie, Houston, for appellant.

Ronald E. Cook, Houston, James L. Hicks, Jr., Dallas, Elena M. Marks, Michael J. Seats, Houston, for appellees.

Before J. CURTISS BROWN, C.J., and ROBERTSON and CANNON, JJ.

## OPINION

CANNON, Justice.

This appeal presents a dispute between creditors, each claiming to hold priority security interests in certain collateral. The trial court granted summary judgment to the creditor holding the prior, perfected security interests. We affirm.

Between February and May of 1982, Mark Products U.S., Inc., appellant, sold seismic exploration equipment to four companies: Vibrosearch, Inc., Vibrosearch Exploration, Inc., Geosignal Exploration, Inc., and N.F. Industries ("the Vibrosearch companies"). The equipment was sold on an open account, unsecured basis, with payment due thirty days following delivery. Mark Products shipped the goods, as per invoice, to Arkansas, Colorado, Kansas, Montana, and Utah, where the Vibrosearch companies operated. By May all deliveries had been made. It is undisputed that the equipment was received and that the Vibrosearch companies never made full payment for it.

In June 1982, InterFirst Bank Houston, N.A., loaned the parent company, Vibrosearch, Inc., $9,000,000 and established a $2,500,000 line of credit. These loans were evidenced by two promissory notes, dated June 30, 1982, and secured by guaranty agreements and security agreements in favor of InterFirst, executed on the same date by each Vibrosearch company. The security agreements covered all of the Vibrosearch companies' assets, including all the seismic exploration equipment sold by Mark Products. In early July, InterFirst filed U.C.C.–1 financing statements with the Secretary of State in each state in which the equipment was located and in Texas, the principal place of business of Vibrosearch, Inc. As of July 16, 1982, the amount of indebtedness owed by the Vibrosearch companies to InterFirst was $8,314,003.60.

By July, Mark Products had become concerned over the outstanding indebtedness of the Vibrosearch companies and sought additional security. On July 16, 1982, Vibrosearch, Inc., executed a promissory note in favor of Mark Products in the principal amount of $772,854.03, representing the balance of the unpaid purchase price of the equipment. Simultaneously, Vibrosearch, Inc., also signed a U.C.C.–1 financing statement and a security agreement. The security agreement provided that Vibrosearch, Inc., would not sell, lease, rent or otherwise dispose of the equipment without the written consent of Mark Products. It

also purported to grant Mark Products a first priority security interest in the seismic exploration equipment. After it was executed, the agreement was revised before both parties agreed to its final form on September 1st. Two days later Mark Products filed a U.C.C.–1 financing statement with the Secretary of State of the State of Texas. It did not file financing statements in any other states.

The Vibrosearch companies failed to make the scheduled payments to either creditor. In December 1982, a portion of the equipment was sold with the consent of InterFirst but without the knowledge or consent of Mark Products. The remainder was sold in March 1983.

Mark Products brought suit first against Vibrosearch, Inc., on the promissory note. It later added InterFirst as a defendant, alleging that Mark Products had a first priority purchase money security interest in the equipment sold and that InterFirst's disposition of the equipment was in derogation of Mark Product's right to its secured collateral. In its suit Mark Products also named as defendants (i) the owners and officers of Vibrosearch, Inc., Julian E. Franklin and William B. Palamountain; (ii) the company that purchased the equipment from the Vibrosearch companies, Vibrosonics, Inc.; and (iii) David Hodgin and Roger Hodgin ("the Hodgin brothers"), the owners of Vibrosonics, Inc. Mark Products moved for partial summary judgment praying that "the court enter a ruling that Mark Products had a first priority purchase money security interest on September 3, 1982, in the equipment sold to Vibrosearch by Mark Products." All defendants countered with cross motions for summary judgment. InterFirst argued that it had the first priority security interest in the equipment, that its actions in protecting its interest were legally justifiable, and that it was entitled to summary judgment on every cause of action asserted against it by Mark Products. The Hodgin brothers merely adopted the motion, proof, and prayer of InterFirst.

All summary judgment motions were heard simultaneously. The court denied Mark Products' first, second, and third motions for partial summary judgment, granting its judgment only against Vibrosearch, Inc., for the amount due on the promissory note plus pre-judgment interest. The court granted the motions for summary judgment of InterFirst and the Hodgin brothers. The motions for summary judgment of the remaining defendants were denied. All issues pending against those defendants were severed and are not before this court.

In its first and third points of error, Mark Products asserts that the trial court erred in granting InterFirst's motion for summary judgment and in denying its third motion for partial summary judgment. It should be noted at the outset that Mark Products' position, stated in its sixth, and last, amended petition, was that, at the time of the sale of the equipment, one of the Vibrosearch companies, Vibrosearch Exploration, Inc., was a wholly owned subsidiary of Vibrosearch, Inc., and that "[i]n or about May 1982, Vibrosearch [Inc.] assumed the obligations of Geosignal [Exploration, Inc.] and N.F. [Industries] and took possession of the Equipment sold to them." In spite of this assertion that it did not sell all of the goods directly to Vibrosearch, Mark Products restricted its third motion for summary judgment solely to "the equipment sold to Vibrosearch by Mark Products," less than .002 percent of the total equipment in contention.

The standards for review of summary judgment established by the Supreme Court of Texas are as follows:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and resolved in its favor.

*Nixon v. Mr. Property Management,* 690 S.W.2d 546, 548–49 (Tex.1985).

The determinative issue of this appeal is which claim of a security interest has priority. The general rule of priority among conflicting security interests in the same collateral where both interests are perfected by filing is that the secured party who first files a financing statement prevails. Tex.Bus. & Com.Code Ann. § 9.312(e)(1) (Tex.UCC) (Vernon Supp.1987). There is, however, a special exception for a purchase money security interest where, as here, the collateral is not inventory:

> (d) A purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral or its proceeds *if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within 20 days thereafter.*

Tex.Bus. & Com.Code Ann. § 9.312 (Tex. UCC) (Vernon Supp.1987) (emphasis added).

If the security interest claimed by Mark Products cannot qualify for a purchase money security interest, it cannot gain the advantaged status provided by § 9.312(d). The "first-to-file rule" then applies, and the claim of InterFirst to first priority prevails.

The Texas Uniform Commerce Code ("Tex.UCC") defines two types of purchase money security interests, that claimed by sellers and that claimed by financing agencies:

> A security interest is a "purchase money security interest" to the extent that it is
> (1) taken or retained by the seller of the collateral to secure all or part of its price; or
> (2) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used.

Tex.Bus. & Com.Code Ann. § 9.107 (Tex. UCC) (Vernon Supp.1987).

■ In its third motion for partial summary judgment and in its response to InterFirst's motion for summary judgment, Mark Products asserts that it is entitled to a seller's purchase money security interest and cites as its authority subsection (1) above. It seeks to avoid the restrictions of the twenty-day grace period imposed by § 9.312(d) by arguing that the period measuring the debtor's possession did not begin to run in the spring of 1982 when the goods were delivered. It contends that Vibrosearch, Inc., was not a "debtor" and the goods were not "collateral" until September 1st when Mark Products agreed to the form of the promissory note and the security agreement, originally signed by Vibrosearch in July. Only on September 1st, Mark Products argues, did the security agreement become effective; only after there was a security agreement could the goods be called "collateral"; and only after there was an "obligation secured" by the security agreement could Vibrosearch be termed a "debtor." Hence, Mark Products asserts, only after there was an effective security agreement could there be a "debtor" in possession of "collateral" to start the running of the grace period; since Mark Products filed two days after the security agreement became effective, its filing on September 3rd was well within the limits of the grace period. We disagree.

In advancing its position, Mark Products relies heavily upon the opinion of the United States Court of Appeals in *Brodie Hotel Supply, Inc. v. United States,* 431 F.2d 1316 (9th Cir.1970). In *Brodie* the debtor had possession of certain equipment for six months and had used the equipment to secure a bank loan before the debtor entered into a sales agreement with the seller and signed a chattel mortgage. The seller filed a financing statement within ten days of the date on which the documents were executed by the debtor but subsequent to the bank's filing. By permitting the debtor to be the apparent owner of the equipment and by failing to file a financing statement while the sale was being negotiated (as permitted under § 9.402(1) of the Alaska UCC), the seller allowed the debtor to obtain double financing. Nevertheless, the court of appeals affirmed the summary judgment for the seller. The court held that regardless of when the debtor came into possession, the grace period did not

begin to run until the debtor-creditor relationship was established because until then the buyer was not a "debtor" within the meaning of § 9.312. The decision seriously undermines the importance of physical delivery in determining the priority of a purchase money security interest. It has been severely criticized. *See* Comment, *Uniform Commercial Code—Protection for the Purchase Money Secured Party Under Section 9–312*, 49 N.C.L.Rev. 849 (1971); Kennedy, *Secured Transaction*, 27 BUS.LAW. 768 (1972). We decline to follow it.

■ As indicated by the official comments to both § 9.107 and § 9.312 of the Texas UCC, the usual context in which a purchase money security interest arises is where a prior, perfected security interest has been asserted under an after-acquired property clause. The circumstance anticipated by the UCC is not the situation before us. We are, therefore, reticent to expand the scope of special protection afforded a purchase money security interest, lest in so doing we defeat the underlying purposes of the Code: to bring predictability to commercial transactions. The holder of the first-in-time security interest can anticipate that its interest will not have priority where property *subsequently* acquired by the debtor is protected by a properly perfected purchase money security interest. But where property is already in the possession of the debtor for a period in excess of twenty days, the conscientious and diligent lender who gives value and properly perfects its security interest in that collateral has a right to rely upon the priorities and protection afforded under the first-to-file provisions. The Code's notice system of filing provides a warning to possible lenders that another creditor already has an interest in goods in the debtor's possession. Where there is no such notice of record and where the debtor has been in possession for more than twenty days, a creditor may rely upon mere possession of the collateral as sufficient evidence of ownership and extend credit without further inquiry. Regardless of the secured creditor's actual knowledge of the debtor's obligations to unsecured creditors, its priority

cannot be defeated by the seller or financer of the goods who had a twenty-day grace period in which to perfect a purchase money security interest and neglected to do so. Without these protections there can be no certainty in commercial transactions.

The invoices, placed in evidence by Mark Products, indicate that Vibrosearch, Inc., entered into a sales agreement with Mark Products between February and May of 1982. The terms of those invoices state that payment was due within thirty days of delivery, and it is undisputed that the goods were delivered no later than May; hence, Vibrosearch, Inc., became obligated to Mark Products no later than May 1982. The Texas UCC does not make the semantic distinction urged by Mark Products. "Collateral" is defined as "the property subject to a security interest." Tex.Bus. & Com.Code Ann. § 9.105(a)(3) (Vernon Supp. 1987). A "debtor" is one "who owes payment or other performance of the obligation secured." Tex.Bus. & Com.Code Ann. § 9.105(a)(4). However, the Texas UCC actually uses the term "collateral" not only to identify property subject to a security interest but also to identify property which *ultimately becomes* the subject of a security interest. Likewise, the Texas UCC actually uses "debtor" to refer to that person or entity who is obligated, or *ultimately becomes* obligated, to a creditor. For example, § 9.402(a) requires that a financing statement give the name of the "debtor" and a description of the "collateral." The section further states, "A financing statement may be filed before a security agreement is made or a security interest otherwise attaches." Were Mark Products' arguments to be adopted, this last quoted sentence would be without meaning because there would be no "debtor" and no "collateral" to describe before the security agreement came into being. The Texas UCC does not limit the use of the terms to persons or objects in a specific time frame; nor should we.

We hold that Vibrosearch, Inc., was a *debtor* in possession of the *collateral* twenty days after delivery, a date no later than June 20, 1982. Since Mark Products did

not file its financing statement until September 3, 1982, it did not perfect its security interest within the requisite twenty-day grace period, and it cannot qualify for the special priority afforded to a purchase money security interest under § 9.312(d). It is not disputed that InterFirst perfected its security interest in July. Therefore, we further hold that InterFirst held the first priority security interest in all the seismic exploration equipment.

■ In its brief, Mark Products asserts that it was not only the seller of the equipment, qualified as a holder of a purchase money security interest under § 9.107(1) of the UCC, but it is also a lender, qualified under § 9.107(2), because Mark Products financed the acquisition of Vibrosearch, Inc.'s rights in the equipment by "allowing it to assume the debts of the Vibrosearch companies." Although no pleading mentions a lender's purchase money security interest, no pleading cites § 9.107(2) as authority, and no pleading refers to Mark Product's "financing" of the equipment, Mark Products argues that the financing theory was adequately raised by its position that Vibrosearch, Inc., did not become a "debtor" until the date it claims the security agreement became effective. We do not agree.

When a purchase money security interest is claimed by one who is not a seller, the creditor must have given present consideration to enable the debtor to acquire rights in the collateral. Any security interest taken as security for a pre-existing claim or antecedent debt is excluded from the purchase money category. Tex.Bus. & Com. Code Ann. § 9.107 comment 2 (Tex.UCC) (Vernon Supp.1987). Mark Products presented no evidence to the trial court of consideration given by Mark Products after the initial delivery of the equipment. Mark Products' appellate brief asserts that Vibrosearch had no obligation to pay the debts of the other Vibrosearch companies until September 1, 1982. This assertion contradicts the position taken in its last amended petition when Mark Products stated: "In or about May, 1982, *Vibrosearch [Inc.] assumed the obligation* of Geosignal [Exploration, Inc.] and N.F. [Industries] and took possession of the Equipment sold to them." (Emphasis added.) We conclude that Mark Products did not argue that it was entitled to a lender's purchase money security interest before the trial court; therefore, we will not consider it. Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal of a summary judgment. Tex.R.Civ.P. 166–A(c); *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 675 (Tex.1979).

Mark Products further contends that there are fact issues which preclude the grant of summary judgment in favor of InterFirst. The first of these concern (1) whether Vibrosearch, Inc. had rights in the collateral in which it gave Mark Products its claimed security interest, and (2) whether Mark Products perfected its security interest in the correct location. These issues are material only to the question whether Mark Products had *any* security interest at all. It is not necessary that we decide whether Mark Products had a second priority security interest or whether Mark Products remained an unsecured creditor. Our holding rests on the basis that Mark Products did not have a *purchase money* security interest and, therefore, InterFirst's first-to-file security interest had priority. A motion for summary judgment is not defeated by the existence of immaterial issues of fact. Tex.R.Civ.P. 166–A(c); *Borg-Warner Acceptance Corp. v. C.I.T. Corp.*, 679 S.W.2d 140, 142 (Tex. App.—Amarillo 1984, writ ref'd n.r.e.).

■ Mark Products asserts other fact issues exist with respect to the security interest taken by InterFirst. It contends that as a secured party, InterFirst must prove that it qualified as a good faith purchaser for value. Mark Products misstates the law of secured transactions. In order to obtain and perfect a security interest, a creditor must fulfill the requirements of § 9.203 and § 9.302 of the Texas UCC. There is no requirement that a secured creditor be a good faith purchaser for value.

In an alternative argument, Mark Products claims that even if InterFirst qualified originally for a first priority security interest, evidence of its subsequent conduct towards Mark Products raises a fact issue of a failure to act in good faith. Mark Products contends that such a failure will alter the priorities of secured creditors, but it cites no Texas cases in support of its argument. The evidence presented by Mark Products, if true, is not such that would preclude enforcement of InterFirst's security interest against Mark Products. We hold that there is no material fact issue as to the good faith of InterFirst.

Mark Products also contends that the deposition testimony of Mr. Richard W. Lilliott, vice president of Mark Products, raises a fact issue as to whether InterFirst breached a settlement agreement with Mark Products. On the contrary, in his deposition Mr. Lilliott clearly stated that, although the parties negotiated, there was no settlement agreement.

■ Mark Products' final attack on the summary judgment concerns the two sales of the equipment. In December 1982, the Vibrosearch companies sold a portion of the equipment as well as other assets (not the subject of this appeal) to Vibrosonics, Inc., another creditor of Vibrosearch. The terms of the sale were that in exchange for the equipment, (1) the owners of Vibrosonics, the Hodgin brothers, would forgive $2,700,000 of an unsecured debt Vibrosearch, Inc., owed them and (2) Vibrosonics would assume liability for $3,850,000 of the principal amount of the loans. InterFirst consented to the sale on the condition Vibrosonics give InterFirst continued first priority security interest in the equipment in the possession of Vibrosonics. Mark Products contends that after the sale it held the only security interest in the collateral. Since Vibrosearch was in default in its obligation to Mark Products, Mark Products claims it had the right to possession; interference with that right constituted conversion. We disagree.

Section 9.306(b) of the Texas UCC, cited by Mark Products, concerns the relative rights in collateral of secured creditors and purchasers. The section does not address the question of the rights of second priority secured creditors as against purchasers who take free and clear of the first priority creditor's interest. Nevertheless, if under the circumstances of the case, § 9.306(b) permits the interest of the first priority creditor to survive the transfer, a creditor holding a subordinant interest would obviously have no claim for possession. We find this to be the case.

Section 9.306(b) provides that a security interest continues in collateral notwithstanding sale, exchange, or other transfer unless the disposition was authorized by the secured party. Official Comment 3 to § 9.306 explains that when the sale is authorized, the purchaser of the collateral takes free of the security interest. If InterFirst had given unrestricted authorization that the equipment be transferred to Vibrosonics free and clear of InterFirst's security interest, Vibrosonics would take free of that security interest. InterFirst did not give such unfettered consent. In the written sales agreement, Vibrosonics acknowledged that it took the collateral subject to InterFirst's first priority security interest. In such a case the security interest survives the transfer. We hold that the interest of InterFirst continued after the sale to Vibrosonics and that Mark Products had no right to possession of the electronic equipment.

■ In the remainder of Mark Products' attack on the sale of the equipment, it contends that the foreclosure sale of March 8, 1983, was a sham, that it was commercially unreasonable, and that Mark Products was entitled to a share of the proceeds. We disagree. The allegations concerning the sale do not raise a fact issue that the sale was commercially unreasonable. After default a secured party may sell any of the collateral in its then condition. Tex.Bus. & Com.Code § 9.504(a) (Tex.UCC) (Vernon Supp.1987). The fact that the foreclosure sale was private does not make it a sham. Disposition of the collateral may be by public or private proceedings. Tex.Bus. & Com.Code § 9.504(c) (Tex.UCC) (Vernon Supp.1987).

In the trial court Mark Products did not challenge the pleadings or proof of InterFirst that, at the time of the sale, Vibrosearch owed InterFirst more than $9,900,-000. Nor did Mark Products present any proof that the equipment could have been sold for an amount exceeding the debt to InterFirst. The proceeds from the sale of all the Vibrosearch assets, only a portion of which was equipment sold by Mark Products, left Vibrosearch still indebted to InterFirst for more than $4,000,000. Had the equipment in contention brought its original purchase price (less than $1,000,000) in addition to the entire amount realized by the two sales of Vibrosearch assets, there still would have been no excess. We hold that Mark Products is not entitled to a share of the proceeds.

For all of the foregoing reasons we hold that the trial court did not err in granting InterFirst's motion for summary judgment or in denying Mark Products' third motion for partial summary judgment. Mark Products' first and third points of error are overruled.

In its second point of error, Mark Products attacks the trial court's denial of its second motion for partial summary judgment. The basis for its motion was that Mark Products had a first priority security interest after the December 1982 sale to which it did not consent. This contention has been adequately addressed in our previous discussion of the grant of InterFirst's motion for summary judgment. The point is overruled.

■ In its fourth and fifth points of error, Mark Products contends that the trial court erred in denying its original motion for partial summary judgment and in granting David Hodgin's and Roger Hodgin's motion for summary judgment. Mark Products' claim against the Hodgin brothers is that, as officers and directors of Vibrosonics, Inc., they are liable to Mark Products for conversion of the equipment sold to Vibrosonics, Inc. in December 1982. As previously discussed, both before and after the sale, InterFirst held a first priority security interest in the equipment. Even if Mark Products' interest in the equipment could survive the sale, based on the assumption that it was a secured creditor and did not give its consent to the sale, it would remain a subordinant creditor with no right to possession. The fourth and fifth points are also overruled.

■ In its sixth point of error, Mark Products complains that the trial court erred in failing to compel the answers to certain questions propounded at the depositions of the attorneys for InterFirst and Vibrosearch, Inc. The motion to compel was pending at the time the motions for summary judgment were filed and subsequently set for hearing. There was no motion requesting continuance of the hearing until the trial court entered a ruling on the motion to compel. The issue was not raised in Mark Products' motion for new trial. It is, therefore, waived. In order to preserve a complaint for appellate review, a party must have presented to the trial court a timely motion, stating the specific grounds for the ruling it desired the court to make, and must have obtained a ruling on its motion. Tex.R.App.P. 52(a). Mark Products' sixth point of error is overruled.

We affirm the judgment of the trial court in granting the motions for summary judgment of InterFirst Bank Houston, N.A., David Hodgin, and Roger Hodgin. In so doing, we also affirm the denial of Mark Products' motions for partial summary judgment.

J. CURTISS BROWN, C.J., not participating.