HUSKER NEWS COMPANY, Appellant,

v.

MAHASKA STATE BANK, Oskaloosa,
Iowa, Appellee,

and

South Ottumwa Savings Bank, Ottumwa,
Iowa; Pella National Bank, Pella,
Iowa; Iowa Trust and Savings Bank,
Oskaloosa, Iowa; Doran H. Taylor
d/b/a Cal's Jack & Jill, Ottumwa, Iowa;
William Bainbridge d/b/a Wigg's Coun-
try Store, Oskaloosa, Iowa; and Hy-
Vee Food Stores, Inc., Chariton, Iowa,
Defendants.

No. 89–808.

Supreme Court of Iowa.

Sept. 19, 1990.

Richard C. Bauerle and Gregory G. Mila-
ni of Keith, Orsborn, Bauerle & Milani,
Ottumwa, for appellant.

Robert K. Clements and James M. Han-
sen of Clements, Blomgren, Pothoven,
Pabst & Stravers, Oskaloosa, for appellee.

NEUMAN, Justice.

The question on this appeal is whether
the trial court erred as a matter of law
when it refused to apply the "discovery
rule" to a conversion action based on a
forged endorsement under section 554.3419
of the Iowa Uniform Commercial Code.
Finding no error, we affirm.

I. Plaintiff Husker News Company is a
wholesale distributor of magazines and pa-
perback books. One of its employees, Wal-
ter Hopf, collected payments from custom-
ers, forged Husker's endorsement on the
checks, and deposited the funds in his per-
sonal account. Because the checks were
routed to the various banks upon which
they were drawn, Husker never saw the
checks with the forged endorsements.
Hopf concealed his embezzlement from
Husker by juggling the accounts of several
retailers who apparently never questioned
the improper credits they were given for
returned books and magazines. Husker
claims it did not become aware of Hopf's
wrongdoing until August 1988.

The case before us involves checks writ-
ten by Wigg's Country Store on its account
with defendant Mahaska State Bank.
Husker sued the bank pursuant to Iowa
Code section 554.3419(1)(c) (1987) for con-
version through payment on Hopf's forged
endorsements.[1] Mahaska answered by as-

---

1. The section provides, in pertinent part, that    "[a]n instrument is converted when ... it is paid

serting that Husker's claim was barred by the five-year statute of limitations for "injuries to property" under Iowa Code section 614.1(4).[2] Husker then interposed its claim that, but for Hopf's fraudulent concealment, it would have timely discovered the forged endorsements.

Upon the bank's motion for summary judgment, the district court found Husker's suit untimely. The court noted that "plaintiff could have discovered Mr. Hopf's scam much earlier with a little diligence, [and] it appears that there is no reason to apply the discovery rule to this commercial conversion case." It is from this ruling that Husker has appealed.

II. At the outset, Husker contends that this case is not appropriate for summary judgment because its inability to discover the embezzlement within the limitation period raises a genuine issue of material fact on the reasonableness of its business practices. The threshold question as we see it, however, is not whether Husker could prevail under *some* factual circumstances but whether it may prevail under *any* circumstances where its petition is filed more than five years after payment is made on the forged endorsement.

■ When a controversy concerns only the legal consequences flowing from undisputed facts, entry of summary judgment is proper. *Farm Bureau Mut. Ins. Co. v. Milne*, 424 N.W.2d 422, 423 (Iowa 1988). Our review is for the correction of errors at law.

III. The district court found, and it is without dispute, that the last check made payable to Husker by Wigg's Country Store was paid by the Mahaska State Bank on Hopf's forged endorsement more than five years prior to the filing of this suit. To overcome the five-year statute of limitation for "injury to property," Husker seeks to apply the discovery rule to the law of commercial paper. The district court declined to do so and, we think, correctly so.

■ It is true that we have applied the discovery rule in a wide variety of cases, including breach of warranty, *Brown v. Ellison*, 304 N.W.2d 197, 200 (Iowa 1981); professional malpractice, *Chrischilles v. Griswold*, 260 Iowa 453, 463, 150 N.W.2d 94, 100 (1967); workers' compensation, *Orr v. Lewis Cent. School Dist.*, 298 N.W.2d 256, 262 (Iowa 1980); and tortious interference with a contract, *Stoller Fisheries, Inc. v. American Title Ins. Co.*, 258 N.W.2d 336, 341 (Iowa 1977). The rule is designed to mitigate the harsh results which might otherwise flow from strict adherence to the statute of limitations when an injured party "is wholly unaware of the nature of his injury and the cause of it." *Chrischilles*, 260 Iowa at 461, 150 N.W.2d at 100. For the reasons that follow, however, we believe application of the doctrine to section 554.3419(1)(c) would be inconsistent with fundamental policies underlying the Uniform Commercial Code.

We begin with the premise that when interpreting any provision of the Uniform Commercial Code, we bear in mind its overriding purposes and objectives. *Tipton v. Woodbury*, 616 F.2d 170, 177 (5th Cir.1980) ("the text of each section should be read in light of the purpose and policy of the Code as a whole"). These objectives include the uniform application of commercial law among the states and the presumption in favor of predictability and finality of commercial transactions. *See* Iowa Code § 554.1102(2)(c) (uniformity); *Mark Prods. U.S., Inc. v. Interfirst Bank Houston*, 737 S.W.2d 389, 393 (Tex.App.1987) (predictability of commercial transactions is underlying purpose of Code); *Fuscellaro v. Industrial Nat'l Corp.*, 117 R.I. 558, 563, 368 A.2d 1227, 1231 (1977) (finality of transactions is essential to law of commercial paper).

■ Although application of the discovery rule to a conversion case is one of first impression in Iowa, the other states

on a forged endorsement." Iowa Code § 554.3419(1)(c).

**2.** Because the parties did not contest the matter on appeal, we assume without deciding that this section applies rather than the two-year limitation for actions based on "injuries to person" found in Iowa Code § 614.1(2).

that have considered the question are nearly unanimous in their refusal to apply the doctrine in this context. We find their decisions persuasive and note that such authority is "entitled to even greater deference where consistency and uniformity of application are essential elements of a comprehensive statutory scheme like ... the Uniform Commercial Code." *Commonwealth v. National Bank & Trust Co. of Cent. Pa.*, 469 Pa. 188, 194, 364 A.2d 1331, 1335 (1976); *see also Yamaha Motor Corp. v. Tri–City Motors & Sports, Inc.*, 171 Mich.App. 260, 429 N.W.2d 871, 876 (1988) (decisions of other states given great weight in construing uniform laws such as U.C.C.); *Needle v. Lasco Indus., Inc.*, 10 Cal.App.3d 1105, 1107, 89 Cal.Rptr. 593, 595 (1970) (decisions of other states are "compelling authority" due to U.C.C.'s goal of uniformity). Joining the majority rule would, of course, advance the U.C.C.'s overarching goal of "mak[ing] uniform the law among the various jurisdictions." Iowa Code § 554.1102(2)(c).

The two reasons most frequently cited by jurisdictions which have rejected the discovery rule in commercial conversion cases are (1) the need for finality in transactions involving negotiable instruments, and (2) the presumption that property owners know where their property is located. The South Dakota Supreme Court, for example, recently summed up this rationale as follows:

> Because of the necessity to have finality involving matters dealing with negotiable instruments in the commercial world and the fact it is presumed that a property owner knows what and where his property is, we hold that in a conversion of property case involving an instrument with a forged endorsement, the statute of limitations commences to run from the date a defendant wrongfully exercises dominion over the property, regardless of the plaintiff's ignorance.

*Wang v. Farmers State Bank of Winner*, 447 N.W.2d 516, 518 (S.D.1989).

The Rhode Island Supreme Court has similarly refused to apply the discovery rule because "[t]he finality of transactions promoted by an ascertainable definite period of liability is essential to the free negotiability of instruments on which commercial welfare so heavily depends." *Fuscellaro*, 117 R.I. at 563, 368 A.2d at 1231. Decisions of other courts echo the same sentiment. *See Kuwait Airways Corp. v. American Sec. Bank, N.A.*, 890 F.2d 456, 461–62 (D.C.Cir.1989) (refusing to extend discovery rule to conversion cases); *Insurance Co. of N. Am. v. Manufacturers Bank of Southfield, N.A.*, 127 Mich.App. 278, 338 N.W.2d 214, 216 (1983) (discovery rule inapplicable because it "would frustrate the strong public policy of finality in commercial transactions"); *Southwest Bank & Trust Co. v. Bankers Commercial Life Ins. Co.*, 563 S.W.2d 329, 332 (Tex.Civ. App.1978) (holding that "the 'discovery rule' does not apply to toll the statute of limitations where a bank is sued for conversion on a forged endorsement"); *Continental Cas. Co. v. Huron Valley Nat'l Bank*, 85 Mich.App. 319, 271 N.W.2d 218, 221 (1978) (rejecting discovery rule in commercial conversion action); *Gerber v. Manufacturers Hanover Trust Co.*, 64 Misc.2d 687, 688–89, 315 N.Y.S.2d 601, 603 (1970) (statutory period in 3–419(1)(c) actions "begins to run from the time of the wrong even though the injured party had no knowledge of its existence").

We think the considerations of finality and predictability represented by the majority rule are substantial and outweigh the countervailing equities which led us to apply the discovery rule in other cases. The strength of our system of commerce depends on a negotiable instrument law that is mechanical in application. Other comparable provisions of the Code affirm this policy. Iowa Code section 554.4406(4), for example, places an absolute three-year limitation on a customer's right to bring a breach of warranty action against its bank for wrongfully paying a check over a forged endorsement. As the official comments to U.C.C. section 4–406 state, even if a customer does not discover the forged endorsement within the three-year limitation period, "the balance in favor of a mechanical termination of the liability of the bank outweighs what few residuary risks

the customer may still have." U.C.C. § 4–406 comment 5 (1987).

We are aware of only two courts that have explicitly rejected the majority rule in favor of applying the discovery rule to commercial conversion cases. *Stjernholm v. Life Ins. Co. of N. Am.*, 782 P.2d 810, 811 (Colo.App.1989); *DeHart v. First Fidelity Bank*, 67 B.R. 740, 745 (D.N.J.1986). In each case, the court chose to favor the rights of unsuspecting victims of forgery over the broader interest of the commercial world. As tempting a choice as that may be in an individual case, however, we think the public would be poorly served by a rule that effectively shifts the responsibility for careful bookkeeping away from those in the best position to monitor accounts and employees. Strict application of the limitation period, while predictably harsh in some cases, best serves the twin goals of swift resolution of controversies and "certainty of liability" advanced by the U.C.C. *Fuscellaro*, 117 R.I. at 563, 368 A.2d at 1231; *see also Von Gohren v. Pacific Nat'l Bank of Washington*, 8 Wash.App. 245, 255, 505 P.2d 467, 474 (1973) (U.C.C. provisions should be construed to avoid institution of "expensive and delaying litigation").

In conclusion, we hold that the discovery rule does not apply to conversion actions under Iowa Code section 554.3419(1)(c). The plaintiff's cause of action against the Mahaska State Bank is therefore barred by the statute of limitations. The decision of the district court granting the bank's motion for summary judgment is affirmed.

AFFIRMED.

All justices concur except LARSON, LAVORATO, and SNELL, JJ., who dissent.

LARSON, Justice (dissenting).

The majority pays lip service to the discovery rule as applied to tort cases in general, yet it refuses to apply the rule here because, for some reason, it considers this case to be unique. Unique, apparently, because it relies on a provision of our Uniform Commercial Code, Iowa Code ch. 554, to determine *when* an instrument is converted. Despite this reference, this is not a Uniform Commercial Code case. It is a tort case, and we have consistently held that the discovery rule should be applied in tort cases. The majority recognizes this. As our cases have noted, it is inherently unfair to deprive a plaintiff of a claim of which he was not, and could not be, aware.

The rationale for the majority's conclusion are (1) the need for finality in transactions involving negotiable instruments, and (2) "the presumption that property owners know where their property is located." (Maj. op. at 478) As to the first rationale, finality and predictability are always arguments favoring strict and unwavering application of statutes of limitation, yet we have subordinated those interests to our interest in fairness. There is, further, no guarantee of uniformity in simply denying application of the discovery rule in all of these cases. Each state has its own statute of limitations, and they vary greatly from one state to another.

As to the second rationale of the majority, that everyone is presumed to know where his property is, two observations should be made: First, there are going to be some cases of conversion, just as in any other tort, when plaintiffs *cannot* know of the conversion until after the statute of limitations has run. The majority says, as a matter of law, that this plaintiff must be charged with such knowledge, despite the evidence of a complicated scheme of covering up the defalcations.

Second, the majority's observation that everyone is presumed to know where his property is makes sense if it is the person's automobile that is missing. But, how can we presume that a business such as Husker News, which deals with thousands of checks each year, must know what has happened to each one of them?

Furthermore, I do not believe it makes any more sense to presume every person knows where his own property is than to say every person is presumed to know when a foreign object is in his own body. Yet, it is almost universally held that the discovery rule applies to cases in which

instruments of surgery are left in a patient's body.

I would reverse and remand for factual determinations on the discovery issue.

LAVORATO and SNELL, JJ., join this dissent.