# United States Court of Appeals
## For the Eighth Circuit
_____

No. 22-2107
_____

Larry Muff, Executor of the estate of Joseph A. Muff

*Plaintiff - Appellant*

v.

Wells Fargo Bank NA

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Northern District of Iowa - Western
_____

Submitted: March 14, 2023
Filed: June 28, 2023
_____

Before SHEPHERD, ERICKSON, and GRASZ, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

The estate of Joseph A. Muff brings three conversion claims against Wells Fargo Bank for allegedly failing to detect that Joseph's stepson, Josh Paige, was stealing money from Joseph by way of fraudulently endorsed checks. After denying the estate's motion to amend its complaint, the district court granted summary judgment in favor of Wells Fargo on all three claims. The estate appeals. Having

jurisdiction under 28 U.S.C. § 1291, we affirm in part, vacate in part, and remand to the district court.

I.

In January 2015, Joseph's wife, Joyce Paige Muff, passed away. Joyce's son from a previous marriage, Josh, had been living with Joyce and Joseph. Josh had assumed responsibility for taking care of Joyce and Joseph, and they relied on Josh for handling personal matters. After Joyce's death, Josh continued to live with Joseph. Joseph continued to rely heavily on Josh to manage his personal affairs. However, Josh soon began to isolate Joseph from the rest of his family, and Joseph's physical and mental health declined.

Roughly a year after his mother's death, Josh initiated a scheme to defraud Joseph of his life's savings. The scheme involved multiple bank accounts. They included (1) a Wells Fargo deposit account originally held jointly by Joseph and Joyce (Joseph/Joyce account); (2) a Wells Fargo deposit account originally held jointly by Josh and Joyce (Josh/Joyce account); (3) a deposit account held by Joseph for Muff Corporation at a different bank not involved in this lawsuit (Muff Corporate account); and (4) a deposit account held by Joseph for farming purposes at a different bank not involved in this lawsuit (Muff Farm account).[1] Joseph also had an Individual Retirement Account (IRA) with Hartford Core Equity Fund.

The estate alleges that Josh fraudulently used the Joseph/Joyce account as a conduit to pilfer funds from his aging stepfather. In January 2016, Josh began instructing Hartford Core to forward checks to Joseph's home by impersonating Joseph over the phone and using Joseph's personal information. Josh then would intercept the checks, forge Joseph's signature, deposit them into the Joseph/Joyce

---

[1]The complaint alleges that the Muff Corporate and Muff Farm accounts were at Wells Fargo. However, the record establishes that these accounts were, in fact, at other banks. The estate admitted this before the district court. And the estate seems to concede as much in its brief. See Appellant Br. 22.

account at Wells Fargo, and transfer the funds electronically into the Josh/Joyce account using his deceased mother's online credentials. The last Hartford Core check was dated August 30, 2017 and deposited into the Joseph/Joyce account on September 8, 2017. Josh ultimately stole over $280,000 from Joseph's Hartford Core IRA in this manner. Josh also fraudulently endorsed checks from the Muff Corporate and Muff Farm accounts at other banks, deposited them into the Joseph/Joyce account, and then, again, transferred the funds electronically into the Josh/Joyce account. All told, Josh stole over $770,000 from his stepfather.

Josh's scheme went undiscovered for months. Eventually, Joseph's brothers became suspicious after discovering that Joseph had overdue credit card bills and his IRA had been drained. In January 2018, Joseph's brothers notified Wells Fargo of potentially fraudulent activity. After a brief investigation, Wells Fargo placed a hold on the Joseph/Joyce account, terminated Joyce's online account access, and closed all other accounts held by Joyce, including the Josh/Joyce account. Iowa law enforcement also opened a criminal investigation. Josh eventually pled guilty to defrauding Joseph of over $770,000. Josh was sentenced to ten years' incarceration and ordered to pay $770,370 in restitution. Joseph died in September 2018.

In December 2020, Joseph's estate, by and through executor Larry Muff, filed this lawsuit in Iowa state court, asserting three common-law conversion claims against Wells Fargo. The estate alleges that Joseph was the victim of fraud and theft at the hands of Josh, and Wells Fargo aided and abetted that theft by failing to detect and prevent it. Count 1 asserts a theory of conversion based on Josh's use of forged endorsements of the Hartford checks that were deposited into the Joseph/Joyce account at Wells Fargo. Count 1 further alleges that Wells Fargo honored the checks Josh forged and, thus, "inappropriately permitted Josh to transfer [Joseph's] funds from the [Hartford] forged checks to accounts which Josh could control" and, in fact, "exercised control over" these monies. Count 2 asserts a theory of conversion based on Josh's fraudulent transfer of funds from the Muff Corporate and Muff Farm accounts into Josh's control. Count 3 asserts a theory of conversion based on the Josh/Joyce account at Wells Fargo, which Josh held with his mother Joyce in joint

tenancy. The complaint contends that, because Joyce died intestate, Joseph was entitled to "one-half of her estate," including the funds in the Josh/Joyce account.

Wells Fargo removed the case to federal court.[2] After removal, the estate twice moved to amend its complaint to add additional causes of action: negligence, elder exploitation, and a claim for punitive damages. The magistrate judge denied both motions on multiple grounds, including for futility and for failure to comply with the local rules, and the district court adopted the magistrate judge's order over the estate's objection. Wells Fargo then filed a motion for summary judgment on all claims, which the estate opposed. The district court granted summary judgment in favor of Wells Fargo and dismissed the case.

In its order, the district court first addressed Count 2—the estate's conversion claim based on the Muff Corporate and Muff Farm accounts—and agreed with Wells Fargo that the estate lacked standing to bring this claim against Wells Fargo. The district court noted that though the estate's complaint alleged that Joseph maintained these accounts at Wells Fargo, the record established—and the estate admitted—that the accounts were actually located at a different bank. Thus, the district court concluded that the estate could not "show that [its] injury is fairly traceable to [Wells Fargo's] conduct."

The district court then addressed Count 3—the estate's conversion claim based on the Josh/Joyce account—and again concluded that the estate lacked standing to bring the claim. The district court pointed to the fact that Josh and Joyce held the account in joint tenancy with a right of survivorship. The district court reasoned that, upon Joyce's death, her interest was extinguished and Josh was left to enjoy the whole property. Joseph, on the other hand, had no interest or claim in the property, even as surviving spouse. The district court also rejected the estate's argument that the Josh/Joyce account was impressed with a constructive trust and

<hr>

[2]This case properly invokes federal diversity jurisdiction. See 28 U.S.C. § 1332(a). Joseph's estate is an Iowa citizen, Wells Fargo Bank is a South Dakota citizen, and the amount in controversy exceeds $75,000.

that Josh breached a fiduciary duty to his mother, concluding that such an argument was unsupported by the record. The district court thus concluded that any alleged injury is not fairly traceable to Wells Fargo.

The district court finally addressed Count 1—the estate's conversion claim based on the forged Hartford Core checks deposited by Josh into the Joseph/Joyce account—and held that the claim fails for several reasons. The district court first concluded that the estate's conversion claim failed as a matter of law because it had not shown that Wells Fargo exercised dominion or control over Joseph's account inconsistent with his rights. The district court next concluded that Joseph's account agreement with Wells Fargo—which required Joseph to timely inform Wells Fargo of any suspected fraud or else Wells Fargo would be released from all liability arising from the transaction—barred the estate's claim based on fraudulent transactions. The district court finally concluded that the estate's claim was barred by the three-year statute of limitations imposed by Article 4 of the Uniform Commercial Code (UCC). See Iowa Code § 554.4111. The district court granted Wells Fargo's motion for summary judgment and dismissed the case. The estate now appeals.

II.

We first address the estate's appeal of the denial of its motion to amend. "This court . . . reviews for abuse of discretion the denial of the motion to amend the complaint but reviews de novo the underlying legal conclusion whether the proposed amendments to the complaint would have been futile." U.S. ex rel. Raynor v. Nat'l Rural Utils. Co-op. Fin., Corp., 690 F.3d 951, 957 (8th Cir. 2012). We "need not evaluate futility, however, if [we] 'can affirm the court's denial of leave to amend on the alternate basis that [the plaintiff] failed to offer a proposed amended complaint to the district court.'" Id. (second alteration in original) (citation omitted).

Such is the case here. While the district court concluded that the estate's proposed amendments were futile, it also concluded that the estate's motion to

amend did not comply with Local Rule 15, which prohibits proposed amended pleadings from "incorporat[ing] any prior pleading by reference" and instead requires "reproduc[ing] the entire new pleading." The estate twice filed a motion to amend its complaint, and it twice incorporated prior pleadings by reference instead of reproducing the entire new pleading. The magistrate denied the estate's motion to amend twice on this ground, and the district court affirmed. We have stressed that "[a] district court does not abuse its discretion in denying leave to amend when a plaintiff has not submitted a proposed amended pleading in accord with a local procedural rule." Raynor, 690 F.3d at 958; see also Far E. Aluminium Works Co. v. Viracon, Inc., 27 F.4th 1361, 1367 (8th Cir. 2022) ("Although litigants are 'freely give[n] leave' to amend pleadings, they still have to 'follow [the] proper procedures.'" (alterations in original) (citation omitted)).

On this basis alone, we conclude that the district court did not abuse its discretion in denying the estate's motion to amend its complaint. See In re Target Corp. Sec. Litig., 955 F.3d 738, 745 (8th Cir. 2020) ("[W]e may affirm the district court on any ground supported by the record.").

## III.

We next address the estate's appeal of the district court's adverse grant of summary judgment. "We review a grant of summary judgment de novo, construing the record in the light most favorable to the nonmoving party." Corkrean v. Drake Univ., 55 F.4th 623, 630 (8th Cir. 2022) (citation omitted). "On appeal, this Court 'may affirm a district court's grant of summary judgment on any basis supported by the record.'" Id. (citation omitted). We address the three conversion claims in the order considered by the district court and argued by the estate in its briefing.

## A.

Count 2 is a conversion claim based on the money Josh stole from the Muff Corporate and Muff Farm accounts. The complaint states that, in addition to the

Joseph/Joyce account, Joseph "maintained at least two other accounts with [Wells Fargo]: The 'Muff Corporate Checking Account' and the 'Farm Checking Account.'" The complaint alleges that Wells Fargo "allowed Josh to improperly transfer funds" from these accounts into the Josh/Joyce account. The complaint contends that these "funds were transferred by Josh contrary to [Joseph's] ownership" and, thus, Joseph "suffered damages as [Wells Fargo] allowed Josh to inappropriately remove funds from [Joseph's] accounts."

The problem is that the Muff Corporate and Muff Farm accounts *were not held at Wells Fargo*. Instead, as the estate admitted, both were held at other banks. The estate now attempts to circumvent this basic factual infirmity by arguing that it is "making a claim for the funds deposited *into* Wells Fargo *from* the Muff Corporation payable to Mr. Muff on a forged endorsement which were then stolen by Josh." Appellant Br. 23. However, that is not what the complaint alleges. The complaint grounds Count 2 on the theory that Wells Fargo "allowed Josh to improperly transfer funds from Mr. Muff's corporate and farm accounts into [Josh's personal account]," and the complaint directly—and incorrectly—alleges that the Muff Corporate and Muff Farm Accounts were held at Wells Fargo. Before us, the estate changes its story. But a plaintiff "may not defeat summary judgment on the basis of a theory found nowhere in their complaint, at least without also moving to amend or absent trial by consent." Johnson v. Thibodaux City, 887 F.3d 726, 736 (5th Cir. 2018); see also Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs., 558 F.3d 731, 735 (8th Cir. 2009) ("Having not raised this fact in his Complaint, [plaintiff] cannot rely on it now."). And to the degree this is an entirely new argument before us, it was waived by not raising it below. See N. Bottling Co. v. Pepsico, Inc., 5 F.4th 917, 922 (8th Cir. 2021).

This basic factual infirmity deprives the estate of standing to bring this claim. To invoke the jurisdiction of the federal courts, plaintiffs must demonstrate standing to sue by showing that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016).

Each element of standing must be supported "with the manner and degree of evidence required at the successive stages of litigation." Young Am.'s Found. v. Kaler, 14 F.4th 879, 887 (8th Cir. 2021) (citation omitted). Thus, on summary judgment, the estate may not rely on "general factual allegations of injury" but instead "must 'set forth' by affidavit or other evidence 'specific facts'" supporting standing. Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992) (citation omitted). At issue here is the second element: traceability. "An injury is fairly traceable if the plaintiff shows 'a causal connection between the injury and the conduct complained of' that is 'not . . . th[e] result [of] the independent action of some third party not before the court.'" In re SuperValu, Inc., 870 F.3d 763, 768 (8th Cir. 2017) (alterations in original) (quoting Lujan, 504 U.S. at 560).

Because the Muff Corporate and Muff Farm accounts were not controlled by Wells Fargo, any injury to those accounts under a theory of conversion is not fairly traceable to Wells Fargo. In other words, the estate has not demonstrated a "causal connection" between the "injury"—Josh's inappropriately removing funds from said accounts—and the "conduct complained of"—Wells Fargo's allegedly allowing this to take place. Id. (citation omitted). As the district court found, Wells Fargo "had no control over the money in those accounts when Josh allegedly removed funds from them. Thus, [the estate] cannot show that [its] injury is fairly traceable to [Wells Fargo]'s conduct." Further, the holder of these accounts—Muff Corporation—is not a party to this lawsuit, and the estate cannot assert claims for injury on its behalf. See Hodak v. City of St. Peters, 535 F.3d 899, 904 (8th Cir. 2008) ("As a general rule, a plaintiff may only assert his own injury in fact and 'cannot rest his claim to relief on the legal rights or interests of third parties.'" (quoting Warth v. Seldin, 422 U.S. 490, 499 (1975)).

Because any injury relating to the Muff Corporate and Muff Farm accounts is not fairly traceable to Wells Fargo, the estate lacks standing to bring Count 2. The district court reached the same conclusion and granted summary judgment to Wells Fargo. However, standing is jurisdictional. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102 (1998). When a court lacks jurisdiction, "the only function

remaining . . . is that of announcing the fact and dismissing the [case]." Id. at 94 (quoting Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1869)). For that reason, "the district court should have dismissed for lack of jurisdiction rather than reaching the merits of the summary judgment motion." Hargis v. Access Cap. Funding, LLC, 674 F.3d 783, 793 (8th Cir. 2012). Accordingly, we vacate the grant of summary judgment on Count 2 and remand to the district court to correct the error.

B.

We now turn to Count 3, the estate's claim for conversion based on the Josh/Joyce account. The estate alleges that, after Joyce died intestate in January 2015, Joseph "was entitled to one-half of her estate," including the funds in the Josh/Joyce account at Wells Fargo. The estate alleges that Wells Fargo "permitted Josh to withdraw the entire balances from [the Josh/Joyce account] without permission." The district court rejected this argument, finding that because Joyce and Josh held the account as joint tenants with a right of survivorship, Joyce's death extinguished her interest in the property and left Josh, as survivor, to enjoy the whole property free from other interests. Without an interest in the Josh/Joyce account, the district court concluded that the estate lacked standing to bring this claim against Wells Fargo.

It is undisputed that Joyce and Josh held the relevant account as joint tenants with a right of survivorship. Under Iowa law, "[j]oint tenancy property is property held by two or more parties jointly, with equal rights to share in the enjoyment of the whole property during their lives, and a right of survivorship which allows the surviving party to enjoy the entire estate." In re Est. of Thomann, 649 N.W.2d 1, 5-6 (Iowa 2002) (citation omitted). Thus, the estate had no property interest in the Josh/Joyce account after Joyce's death; the account passed entirely to Josh by operation of Iowa law. Without any interest in the account at the heart of this claim, the estate has not shown that it "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized'" and "fairly traceable to the challenged conduct

of [Wells Fargo]." Spokeo, 578 U.S. at 338-39 (quoting Lujan, 504 U.S. at 560). As such, the estate lacks standing to pursue Count 3.

Not so, says the estate. It argues that the Josh/Joyce account was, in fact, impressed with a constructive trust and that Josh's alleged fraud violated the fiduciary duty he owed to his mother under this arrangement. The estate points to Iowa case law on the doctrine of confidential relationships, which applies to "any relationship of blood, business, friendship, or association in which the parties repose special trust and confidence in each other and are in a position to have and exercise, or do have and exercise, influence over each other." First Nat'l Bank in Sioux City v. Curran, 206 N.W.2d 317, 321 (Iowa 1973) (citation omitted). And Iowa courts recognize that confidential relationships may disrupt the ordinary application of joint tenancy default rules. See Ackley State Bank v. Thielke, 920 F.2d 521, 524 (8th Cir. 1990) ("Iowa has . . . h[eld] that survivorship rights [of joint tenancy bank accounts] cannot be rebutted by extrinsic evidence absent fraud, duress, mistake, *or a confidential relationship*." (emphasis added) (citing In re Estate of Roehlke, 231 N.W.2d 26, 28 (Iowa 1975)). The estate contends that because Joyce and Josh had a confidential relationship, Josh was under a fiduciary duty to act in his mother's interest in managing the Josh/Joyce account. Appellant Br. 25-27. We understand the estate to argue that Josh breached his duty by taking the entirety of the Josh/Joyce funds for his own use and that the estate can sue based on this injury to reach funds in which Joseph may hold an interest after Joyce's death.

Even assuming the existence of a confidential relationship under Iowa law could give the estate standing to sue, the factual record fails to support the existence of a confidential relationship in the first place. The estate points to statements by one of Joseph's brothers that, in the last year of her life, Joyce relied on Josh to handle "household affairs" and "personal matters." But the estate cites no Iowa cases finding a confidential relationship on such a thin basis. Indeed, Iowa courts require more than just a "blood relationship such as between parent and child" and instead demand evidence of "a dominant influence." Luse v. Grenko, 100 N.W.2d 170, 173-74 (Iowa 1959) (finding confidential relationship between mother and

-10-

daughter because of mother's "inability to read, write or speak the English language, her age and failing health," and her significant reliance on others to transact business); see also Curran, 206 N.W.2d at 319-22 (finding confidential relationship between 90-year-old woman who was nearly blind and living in a hospital geriatric ward and her confidant who possessed her financial records). Beyond the mother-son relationship and Josh's handing of Joyce's personal matters, the estate marshals no specific facts in support of the existence of a confidential relationship between Joyce and Josh prior to Joyce's death, relying instead on conclusory assertions and speculation. At this stage in the litigation, the plaintiff must set forth "specific facts" by affidavit or other evidence to support standing and cannot rely on "general factual allegations of injury." Lujan, 504 U.S. at 561. The estate has failed to do so here.

Because the estate has not demonstrated standing, we lack jurisdiction over Count 3. As with Count 2, the district court should have dismissed the claim instead of entering summary judgment for Wells Fargo. Therefore, we vacate and remand on Count 3.

C.

Finally, Count 1 is a claim of conversion based on the forged Hartford Core checks deposited by Josh into the Joseph/Joyce account at Wells Fargo. The district court dismissed this claim on three separate grounds: (1) the claim fails as a matter of law; (2) the claim is barred by Joseph's account agreement; and (3) the claim is barred by the applicable statute of limitations. Again, we "may affirm a district court's grant of summary judgment on any basis supported by the record." Corkrean, 55 F.4th at 630 (citation omitted).

Unlike Counts 2 and 3, the estate has standing to pursue Count 1 in federal court. The estate asserts a classic monetary injury to Joseph's personal account at Wells Fargo. See TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2204 (2021) (describing "physical or monetary injury" as "a concrete injury in fact under Article III"). Further, the estate adequately asserts that this monetary harm is "fairly

-11-

traceable" to Wells Fargo's inaction and "likely to be redressed by a favorable judicial decision." Spokeo, 578 U.S. at 338. Thus, for Count 1, the estate has adequately alleged Article III standing.

While the district court dismissed this claim on three separate grounds, we need only consider the relevant statute of limitations to resolve this appeal. Iowa law imposes a three-year statute of limitations for all actions brought "to enforce an obligation, duty, or right arising under" Article 4 of Iowa's UCC. Iowa Code § 554.4111. Though the estate did not explicitly ground this lawsuit in the UCC, the UCC statute of limitations nonetheless applies. That is because "[t]he relationship between a bank and its customer is based on contract," and "[a]bsent an express agreement of the parties to the contrary, the provisions of Article 4 of the [UCC] governing bank deposits and collections are made express provisions of the depositor's contract with the bank." Clinton Nat'l Bank v. Saucier, 580 N.W.2d 717, 719 (Iowa 1998). Further, the estate's common-law conversion claim "aris[es] under" the UCC, as adopted by Iowa, because it seeks to enforce an obligation that Wells Fargo as a bank owes to Joseph as its depositor. Indeed, the Iowa Court of Appeals has recognized that the Article 4 statute of limitations applies to similar common-law claims. See Davis Mobile Homes, L.L.C. v. U.S. Bank Nat'l Ass'n, 2012 WL 5356132, at *4 (Iowa Ct. App. 2012) (recognizing, in case involving common-law conversion claim, that § 554.4111 applies to suits arising under Article 4). And though it has not explicitly held as much, the Iowa Supreme Court has recognized that "[a] good argument can be made that common-law recovery rights in commercial transactions were supplanted . . . by" the UCC. Husker News Co. v. S. Ottumwa Sav. Bank, 482 N.W.2d 404, 409 (Iowa 1992); accord Wetherill v. Putnam Invs., 122 F.3d 554, 556-58 (8th Cir. 1997) (applying UCC time limitations to common-law claims arising under Massachusetts law).

Applying Article 4's three-year statute of limitations, Count 1 is time-barred. Conversion actions brought to enforce rights relating to forged checks under the UCC generally accrue when the checks are converted. See Husker News Co. v. Mahaska State Bank, 460 N.W.2d 476, 476-77 (Iowa 1990) (finding, in UCC

conversion claim against bank for payment on forged endorsement, that cause of action accrued when last check was paid by the bank); accord Kuwait Airways Corp. v. Am. Sec. Bank, N.A., 890 F.2d 456, 461-62 (D.C. Cir. 1989) ("[T]he injury to the payee in a conversion case manifests itself at the time the wrongful act occurs—that is, when the forger deposits or cashes the check."). Thus, the estate's right of action accrued when Josh deposited the last Hartford check at Wells Fargo on September 8, 2017. However, this lawsuit was not filed until December 17, 2020. As such, the statute of limitations has run, and the estate is barred from bringing this claim.

The estate counters first by arguing that the three-year statute of limitations does not apply. The estate instead points to the five-year statute of limitations for actions "brought for injuries to property." Iowa Code § 614.1(4). Indeed, the estate insists that the UCC does not apply here at all; after all, its complaint made no mention of the UCC. But Count 1—a common-law conversion claim brought under the theory that Wells Fargo "honored [Josh's] forged checks" and "permitted Josh to transfer funds from Mr. Muff's personal checking accounts . . . without Mr. Muff's permission"—is plainly grounded in the obligations owed by Wells Fargo to Joseph as a bank to its depositor. Again, this bank-depositor relationship is "based on contract," and Iowa law makes Article 4 an express provision of that contract unless stated otherwise in the customer's account agreement. Saucier, 580 N.W.2d at 719. As such, Joseph's relationship with Wells Fargo is subject to the limitations in Article 4, including the statute of limitations for claims to enforce obligations arising from the bank-depositor relationship.

The estate also seeks to evade the statute of limitations by way of Iowa's "discovery rule." This doctrine tolls a statute of limitations "when an injured party 'is wholly unaware of the nature of his injury and the cause of it.'" Mahaska State Bank, 460 N.W.2d at 477 (citation omitted). The estate argues that the discovery rule is applicable here because of the nature of Josh's fraud and because Joseph lacked the capacity to manage his financial affairs. However, the Iowa Supreme Court held in Mahaska State Bank that the discovery rule does not apply to commercial conversion actions based on forged endorsements under the UCC,

concluding that "considerations of finality and predictability" in negotiable instrument law "outweigh the countervailing equities." Id. at 478-79; accord Menichini v. Grant, 995 F.2d 1224, 1231 (3d Cir. 1993) ("[A] clear majority of jurisdictions addressing the issue reject application of the discovery rule to conversion of negotiable instruments."). Thus, even if Joseph was taken advantage of by Josh and completely unaware of the injury, Iowa law does not allow his estate to bypass the statute of limitations and sue Wells Fargo. Because this action is barred by the statute of limitations, we conclude that the district court correctly granted summary judgment to Wells Fargo.

## IV.

For the foregoing reasons, we affirm in part, vacate in part, and remand to the district court with instructions to dismiss Counts 2 and 3 without prejudice for lack of jurisdiction.

_____