FEDERAL LAND BANK OF ST PAUL v BAY PARK PLACE, INC

Docket No. 93324. Submitted April 7, 1987, at Lansing. Decided July 21, 1987.

The Federal Land Bank of St. Paul (FLB) began a mortgage foreclosure action against Bay Park Place, Inc., and others, which resulted in a judgment of foreclosure on October 21, 1982. On December 26, 1982, Bay Park filed a petition for reorganization under Chapter 11 of the bankruptcy law. The bankruptcy court allowed FLB to conduct its foreclosure sale and conclude the foreclosure proceedings. FLB sold the property and, on September 19, 1983, FLB was granted a deficiency judgment totalling $104,797. On November 23, 1982, Production Credit Association of North Central Michigan (PCA) obtained a judgment against Bay Park in the amount of $92,631.99. NewCentury Bank-Thumb had a long lending history with Bay Park prior to the bankruptcy and held several documents under which it claimed security in Bay Park's assets. NBD-Sandusky Bank made a loan to Bay Park in July, 1984, during the pendency of the bankruptcy proceedings. The bankruptcy petition was dismissed in 1984, and FLB and PCA served writs of garnishment on Michigan Sugar Company and Pillsbury Company for proceeds those companies owed to Bay Park. Michigan Sugar and Pillsbury informed FLB and PCA that NewCentury, NBD-Sandusky, and others also claimed some interest in the funds owed to Bay Park. FLB then filed a motion for interpleader as a proceeding supplementary to its principal action in Tuscola Circuit Court. Michigan Sugar and Pillsbury paid into court the money they owed Bay Park and were discharged. Bay Park did not appear to contest the garnishment proceedings. FLB, PCA, NewCentury, NBD-Sandusky, and the other creditors submitted their claims to the court based on

REFERENCES

Am Jur 2d, Secured Transactions §§ 150-152, 273, 279-281, 290.

Sufficiency of debtor's signature on security agreement or financing statement under UCC §§ 9-203 and 9-204. 3 ALR4th 502.

Sufficiency of description of collateral in security agreement under UCC §§ 9-110 and 9-203. 100 ALR3d 940.

Sufficiency of description of crops under UCC §§ 9-203(b) and 9-402(i). 67 ALR3d 308.

a stipulated set of facts. The court, Patrick R. Joslyn, J., determined as a matter of law that NewCentury held a perfected security interest in the proceeds and that NewCentury's claim was junior to that of NBD-Sandusky and that NewCentury and NBD-Sandusky therefore had priority over the judicial liens asserted by FLB and PCA. NewCentury and NBD-Sandusky were found to be entitled to all but $1,471.88 of the funds. FLB and PCA appealed.

The Court of Appeals *held:*

1. The trial court erred in extending the scope of NewCentury's security interest beyond that which was unambiguously described in the security agreement.

2. NBD-Sandusky's claim is unperfected and is thus defeated by the judicial liens of FLB and PCA.

Reversed.

1. SECURED TRANSACTIONS — SECURITY AGREEMENTS — COLLATERAL — CROPS.

There must be a written security agreement containing a description of the collateral and signed by the debtor in order to create an effective security interest under Article 9 of the Uniform Commercial Code; when the security interest covers crops growing or to be grown, the description of the collateral must include a description of the land upon which the crops are growing or are to be grown, and in addition to the requirement of a description of the collateral, some value or consideration must have been provided the debtor and the debtor must have rights in the collateral before the security interest attaches (MCL 440.9203[1][a], [c]; MSA 19.9203[1][a], [c]).

2. SECURED TRANSACTIONS — FINANCING STATEMENTS — SECURITY AGREEMENTS.

The purpose of a financing statement is to place third parties on notice of the existence of a security agreement and, although a financing statement may be used to assist in the interpretation of the security agreement, the financing statement does not create a security interest and cannot extend a security interest beyond what has been unambiguously described in the security agreement.

3. SECURED TRANSACTIONS — SECURITY AGREEMENTS — AMBIGUITIES.

An ambiguous security agreement is to be construed against the party who drafted the agreement.

*Learman, Peters, Sarow & McQuillan* (by *D. Keith Birchler*), for plaintiff.

*Clark & Clark, P.C.* (by *Donald J. Clark*), for NewCentury Bank-Thumb.

*Rigney & Teeple* (by *Donald A. Teeple, Jr.*), for NBD-Sandusky Bank.

Before: M. J. KELLY, P.J., and HOOD and E. F. OPPLIGER,* JJ.

M. J. KELLY, P.J. In this interpleader action, several creditors of a financially struggling farming operation known as Bay Park Place, Inc., claim the right to certain funds deposited with the Tuscola Circuit Court by Michigan Sugar Company and by Pillsbury Company. On the basis of a stipulated statement of facts, the circuit court determined as a matter of law that NewCentury Bank-Thumb held a perfected security interest in the assets of Bay Park and that NewCentury had conceded on oral argument that its claim was junior to NBD-Sandusky Bank's claim. Thus, the court ruled that NewCentury and NBD-Sandusky were entitled to all but $1,471.88, and thus had priority over the judicial liens asserted by appellants, Federal Land Bank of St. Paul and Production Credit Association of North Central Michigan. An order was entered June 10, 1986, awarding Federal Land Bank and Production Credit jointly $1,471.88, NBD $10,576.99 plus interest, and New-Century the remainder of the funds held in escrow. Both Federal Land and Production Credit appeal as of right. We reverse.

By order entered September 19, 1983, which was allowed even though Bay Park Place had filed a petition for reorganization under Chapter 11 of the Bankruptcy Code, see 11 USC 362, the circuit court entered a judgment of deficiency after fore-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

closure in favor of Federal Land and against Bay Park Place in the amount of $104,797. Following the dismissal of the bankruptcy petition in 1984, Federal Land served Michigan Sugar with writs of garnishment on November 5, 1984, and on December 13, 1984. A third writ was served upon Pillsbury on January 14, 1985. At some undetermined point, Federal Land learned of the existence of a judgment entered against Bay Park Place on behalf of Production Credit in a separate action, which judgment remained unsatisfied. Federal Land and Production Credit combined efforts to enforce their judgments and Production Credit also served a writ of garnishment on Michigan Sugar on November 5, 1984.

The funds held by Michigan Sugar represented sums due Bay Park Place or sums to become due in the future under a contract for the sale of sugar beets to Michigan Sugar. The funds held by Pillsbury and claimed by Federal Land represented proceeds owed Bay Park Place for corn, beans and fertilizer. Upon being served the writs of garnishment, Michigan Sugar and Pillsbury informed Federal Land and Production Credit that other parties also claimed an interest in the proceeds, thus prompting Federal Land to file a motion for interpleader. The other creditors were served notice of the interpleader proceeding and the garnishee defendants were discharged after depositing into the court the monies owed Bay Park Place. As of the date of the final order entered June 10, 1986, Michigan Sugar had deposited $88,115.12 with the court in sugar beet proceeds and Pillsbury had deposited $5,625.14 in corn and bean proceeds, plus $1,471.88 in fertilizer proceeds.

Federal Land and Production Credit have stipulated that their judicial liens are equal in priority. The dispute in this case is whether their judicial

liens have priority over the claims asserted by NewCentury and NBD.

NewCentury claims a right to the bulk of the sugar beet proceeds as well as the corn and bean proceeds on the basis of several promissory notes, assignments and security agreements entered into with Bay Park Place. In January of 1979, NewCentury had extended credit to Bay Park Place in return for an assignment of Bay Park Place's interest in a 2,000-acre farm located in Sanilac County. Bay Park Place was purchasing the farm on land contract. In March of 1979, Bay Park Place gave further security for the loan by granting NewCentury a security interest in "all crops growing or planted within one (1) year" of the date of the security agreement. On July 27, 1982, Bay Park Place assigned a lien or security interest on "all personal property of any nature" in its possession. On August 2, 1982, NewCentury filed a financing statement covering "crops growing or to be grown" by Bay Park Place. The financing statement, however, was silent as to the one-year duration of the security interest described in the security agreement. As of February 9, 1985, Bay Park Place owed NewCentury a total of $517,531.36.

NBD's claim to the funds in escrow arises out of a loan agreement entered into with Bay Park Place on July 11, 1984, whereby NBD paid Bay Park Place the sum of $10,000 and accepted the Michigan Sugar beet contract as collateral. As of July 9, 1985, Bay Park Place owed $11,292.86 on the NBD loan.

The circuit court concluded on the basis of these stipulated facts that NewCentury had perfected its security interest against the sugar beet, corn and bean proceeds. The court reached this conclusion through a combined reading of the March 1, 1979, July 27, 1982, and August 2, 1982, documents. It

was further held that NBD had failed to perfect its security interest in the sugar beet proceeds and thus did not have priority over the judicial liens of Federal Land or Production Credit. NBD was nevertheless granted its full claim on the basis of a concession made by NewCentury during oral argument. Since the trial court was presented with stipulated facts, we review the decision solely for errors of law.

In order to create an effective security interest under Article 9 of the Uniform Commercial Code, MCL 440.9101 *et seq.;* MSA 19.9101 *et seq.,* there must be a written security agreement containing a description of the collateral, signed by the debtor. MCL 440.9203(1)(a); MSA 19.9203(1)(a). When the security interest covers crops growing or to be grown, the description of the collateral must include a description of the land upon which the crops are growing or are to be grown. *Id.* In addition to the requirement of a description of the collateral, some value or consideration must have been provided the debtor and the debtor must have rights in the collateral before the security interest attaches. MCL 440.9203(1)(c); MSA 19.9203(1)(c).

In both the March 1, 1979, and July 27, 1982, security agreements with Bay Park Place, NewCentury expressly limited its security interest to "all crops growing or planted within one (1) year" from the date of the security agreement. There is no dispute that monies deposited into the court by Michigan Sugar and Pillsbury represented proceeds from crops planted after July of 1983. In finding that NewCentury's security interest included crops planted after the first year had expired, the circuit court relied upon the August 2, 1982, financing statement which generally de-

scribed "crops growing or to be grown" and failed to include any one-year limitation.

The purpose of a financing statement is to place third parties on notice of the existence of a security agreement. Although a financing statement may be used to assist in the interpretation of the security agreement, the financing statement does not create a security interest and cannot extend a security interest beyond what has been unambiguously described in a security agreement. *In the Matter of Martin Grinding & Machine Works, Inc,* 793 F2d 592, 594-595 (CA 7, 1986); *In the Matter of California Pump & Manufacturing Co, Inc,* 588 F2d 717 (CA 9, 1978). Accordingly, the trial court erred in extending the scope of NewCentury's security interest beyond that which was unambiguously described in the security agreement.

On appeal, NewCentury presents an alternative basis for finding the creation of a security interest of unlimited duration in Bay Park Place's future crops. We are unpersuaded. First, the definitions of personal property as contained on page one and in paragraph seven of a series of essentially identical documents entitled "Assignment of Purchaser's Interest in Land Contract as Security in Mortgage" and dated January 2, 1979, January 25, 1979, and July 28, 1982, are sufficiently ambiguous to create some question as to whether the assignment of interest was intended to cover crops. Given the separate security agreements regarding crops which we have already described, it is likely that the parties did not intend for the assignments to cover the same property. Ambiguous security agreements such as these are to be construed against the parties who draft the agreements, in this case, NewCentury. *Brauer v Hobbs,* 151 Mich App 769, 774; 391 NW2d 482 (1986).

As noted by the circuit court, NBD's claim is

unperfected and is thus defeated by the judicial liens of Federal Land Bank and Production Credit. Since NBD failed to argue below that it was relieved of its obligation to file a financing statement under MCL 440.9104(f); MSA 19.9104(f), we decline to consider the argument on appeal. Nor are we inclined to affirm NBD's award under MCL 440.9302(1)(e); MSA 19.9302(1)(e), since NBD is a "person who regularly takes assignments of any debtor's accounts" and is therefore obligated to file a financing statement. See MCL 440.9302; MSA 19.9302, Official UCC Comment No. 5.

Reversed.