NBD-SANDUSKY BANK v RITTER

Docket No. 104868. Submitted October 19, 1988, at Lansing. Decided August 21, 1989. Leave to appeal applied for.

Sam and Emily Ritter entered into a security agreement granting NBD-Sandusky Bank a security interest in farm equipment owned by the Ritters, including any after-acquired property. The bank perfected its security interest in the Ritters' farm equipment around May 30, 1985. In July, 1985, the Ritters arranged to purchase a John Deere combine and John Deere grain platform from Laethem Farm Service Company. The Ritters executed a purchase order and took possession of the two pieces of equipment on July 23, 1985. On July 31, 1985, Sam Ritter signed a loan contract and security agreement through Laethem Farm Service Company, applying for financing from John Deere Company. The contract was conditioned upon acceptance by John Deere Company as lender and granted Deere a security interest in the combine and grain platform. Upon Ritter's signing of the contract, Laethem took credit on its account with John Deere Company for the amount financed. A representative of John Deere Company signed the loan contract and security agreement on August 15, 1985. John Deere Company filed a financing statement for the equipment with the Sanilac County Register of Deeds on August 7, 1985. The Ritters subsequently defaulted on loans they had secured through NBD-Sandusky Bank and the bank repossessed and sold some of the Ritters' equipment and applied the proceeds toward the balance owing on the loans. The combine and grain platform were not repossessed and sold because John Deere Company claimed it had a first priority purchase money security interest in the two pieces of equipment. NBD-Sandusky Bank filed a complaint for claim and delivery in Sanilac Circuit Court against the Ritters, John Deere Company, and Laethem Farm Service Company seeking a determination that NBD-Sandusky Bank had a valid prior perfected security interest in

REFERENCES

Am Jur 2d, Secured Transactions §§ 52, 72-81, 273, 282, 351, 360, 376 et seq., 486 et seq.

See the Index to Annotations under Agriculture; Equipment and Machinery; Secured Transactions.

the combine and grain platform and to have possession of the equipment turned over to the bank for sale and application of the proceeds to the balance owed by the Ritters. Following trial, the court, George E. Benko, J., found that John Deere Company did not perfect its security interest within twenty days from when the Ritters took possession of the equipment, that John Deere's security interest was not perfected until August 15, 1985, the date its representative signed the loan contract and security agreement, and that NBD therefore was the first secured party with regard to the equipment. John Deere Company appealed.

The Court of Appeals *held:*

A purchase money security interest in collateral has priority over a conflicting security interest in the same collateral if the purchase money security interest is perfected within twenty days of the time the debtor receives possession of that collateral. Sam Ritter took possession of the combine and grain platform on July 23, 1985, the day the goods were physically delivered to his place of business. John Deere's security interest did not attach until August 15, 1985, because an agreement was not reached until that date and value was not given until that date. John Deere's argument that the loan contract and security agreement were accepted by performance before the August 15 signing date is not supported by the evidence. John Deere's purchase money security interest in the combine and platform did not attach until more than twenty days after Sam Ritter took possession of the equipment. Deere's security interest therefore does not qualify for special priority. NBD-Sandusky Bank's security interest was first perfected, and it has priority.

Affirmed.

MACKENZIE, J., dissented. She would hold that possession of collateral does not depend on physical control over the property to be purchased, but on the time the debtor/creditor relationship arises. She would also hold that the debtor/creditor relationship between Sam Ritter and John Deere Company did not arise until August 15, 1985, when Deere officially agreed to accept Ritter's loan application. Deere would therefore have twenty days after August 15 to perfect its purchase money security interest to have first priority over the equipment. Judge MacKenzie states that the requisites for attachment of Deere's security interest were met on August 15, 1985, and that it therefore has priority over NBD-Sandusky Bank's security interest. She would hold that the trial court clearly erred in holding to the contrary.

1. SECURED TRANSACTIONS — PURCHASE MONEY SECURITY INTERESTS
   — PRIORITY.
   A purchase money security interest in collateral has priority over
   a conflicting security interest in the same collateral if the
   purchase money security interest is perfected within twenty
   days of the time the debtor receives possession of that collateral
   (MCL 440.9312[5]; MSA 19.9312[5]).

2. SECURED TRANSACTIONS — PURCHASE MONEY SECURITY INTERESTS
   — POSSESSION OF COLLATERAL.
   A debtor receives possession of collateral for purposes of the
   provisions of the Uniform Commercial Code which deal with
   perfection of purchase money security interests when he has
   physical holding or control over it, regardless of whether he
   has an actual legitimate legal interest in the collateral at that
   time (MCL 440.9312[5]; MSA 19.9312[5]).

3. SECURED TRANSACTIONS — SECURITY INTERESTS — PERFECTION —
   ATTACHMENT.
   Security interests are perfected when two events occur: (1) the
   interest must attach and (2) the creditor must have taken all
   the applicable steps for perfection, including filing a financing
   statement; a security interest attaches when there is an agree-
   ment that certain items are to secure payment or performance
   of an obligation, value is given, and the debtor acquires rights
   in the collateral (MCL 440.9203[1], [2], 440.9303[1]; MSA
   19.9203[1], [2], 19.9303[1]).

4. SECURED TRANSACTIONS — SECURITY INTERESTS — FINANCING
   STATEMENTS.
   When a financing statement is filed prior to attachment, the
   security interest is perfected at the time it attaches (MCL
   440.9303[1]; MSA 19.9303[1]).

5. SECURED TRANSACTIONS — SECURITY AGREEMENTS — ATTACHMENT.
   A security agreement usually only requires a debtor's signature
   in order to be considered an agreement for attachment pur-
   poses, unless the agreement postpones the time of attaching
   (MCL 440.9203[1][a], [2]; MSA 19.9203[1][a], [2]).

6. SECURED TRANSACTIONS — LOAN CONTRACTS — JUDICIAL CONSTRUC-
   TION.
   Ambiguities in a loan contact and security agreement must be
   construed against the party which drafted it.

*Rigney, Teeple & Hearsch* (by *David W. Hearsch*), for plaintiff.

*Foster, Swift, Collins & Coey, P.C.* (by *David C. Coey* and *Mark H. Canady*), for John Deere Company.

Before: MICHAEL J. KELLY, P.J., and MACKENZIE and S. B. MILLER,* JJ.

MICHAEL J. KELLY, P.J. Defendant-appellant John Deere Company appeals as of right from a judgment in favor of plaintiff NBD-Sandusky Bank. The trial court found that John Deere Company's purchase money security interest in two pieces of farm equipment was not perfected within twenty days after the debtor received possession of the equipment, so it was subordinate to NBD's prior perfected security interest in the same equipment under MCL 440.9312(5), (6); MSA 19.9312(5), (6).

In May of 1985, Sam and Emily Ritter entered into a security agreement granting NBD-Sandusky Bank a security interest in farm equipment owned by the Ritters, including any after-acquired property. The bank perfected its security interest in the Ritters' farm equipment around May 30, 1985.

In July of 1985, the Ritters arranged to purchase two pieces of farm equipment from Laethem Farm Service Company. These pieces of equipment were a John Deere Model 660 combine and a John Deere sixteen-foot "quick tach" grain platform. The Ritters executed a purchase order and took possession of these two pieces of equipment on July 23, 1985. On July 31, 1985, Sam Ritter signed a Loan Contract and Security Agreement through Laethem Farm Service Company, applying for financing from John Deere Company. This contract was conditioned upon acceptance by John Deere Company as lender. Under the terms of this

* Circuit judge, sitting on the Court of Appeals by assignment.

agreement Sam Ritter granted John Deere Company a security interest in the combine and quick tach platform. Upon Ritter's signing of this contract, Laethem Farm Service took credit on its account with John Deere Company for the amount financed. A representative of John Deere Company signed the loan contract and security agreement on August 15, 1985. Deere Company filed a financing statement for this equipment with the Sanilac County Register of Deeds on August 7, 1985.

After trial, held October 26, 1987, the trial judge found that John Deere Company did not perfect its security interest within twenty days, that its security interest was not perfected until August 15, 1985, the date its representative signed the loan contract and security agreement, and that NBD-Sandusky Bank therefore was the first secured party with regard to the combine and quick tach platform.

Defendant Deere Company argues that the trial court erred in holding that plaintiff's security interest had priority over its purchase money security interest. Deere Company argues that its security interest was perfected on or before August 7, 1985, the date that it filed its financing statement. We disagree.

Priority between conflicting security interests in the same collateral is usually determined according to priority in time of filing or perfection, whichever is earlier. MCL 440.9312(6); MSA 19.9312(6). However, a purchase money security interest in collateral has priority over a conflicting security interest in the same collateral if the purchase money security interest is perfected within twenty days of the time the debtor receives possession of that collateral. MCL 440.9312(5); MSA 19.9312(5). In order for John Deere Company to claim priority over NBD-Sandusky Bank, its

purchase money security interest must have been perfected within twenty days after Ritter received possession of the equipment.

As pointed out in Judge MACKENZIE's dissenting opinion, the date that Sam Ritter took possession of the property in question is determinative. However, we disagree with Judge MACKENZIE's conclusion that possession was not achieved until the loan agreement was signed. Although the term "possession" is not defined by the Uniform Commercial Code,

> The Code's general purpose is to create a precise guide for commercial transactions under which businessmen may predict with confidence the results of their dealings. [*In re Automated Bookbinding Services, Inc*, 471 F2d 546, 552 (CA 4, 1972).]

Since the UCC is meant to be a plainly read, uniform code, it would not be appropriate to interpret the words "receives possession" in any other way than ordinary usage dictates. The term "possession," as commonly understood, does not indicate that a party must have an actual legitimate legal interest in the item, but merely that he has physical holding or control over it. As noted by Gilmore, a draftsman of Article 9 of the UCC,

> "Receives possession" is evidently meant to refer to the moment when the goods are physically delivered at the debtor's place of business—not to the possibility of the debtor's acquiring rights in the goods at an earlier point by identification or appropriation to the contract or by shipment under a term under which the debtor bears the risk. [2 Gilmore, Security Interests in Personal Property, p 787 (1965).]

We therefore hold that Sam Ritter took possession of the farm equipment in question on July 23,

1985, the day the goods were physically delivered to his place of business. To claim priority over NBD-Sandusky Bank, John Deere Company's purchase money security interest must have been perfected within twenty days after this date.

Security interests are perfected when two events occur: (1) the interest must "attach," and (2) the creditor must have taken all the applicable steps for perfection, including filing a financing statement. MCL 440.9303(1); MSA 19.9303(1); *Yamaha Motor Corp, USA v Tri-City Motors & Sports, Inc,* 171 Mich App 260, 277; 429 NW2d 871 (1988). A security interest attaches when there is an agreement that certain items are to secure payment or performance of an obligation, value is given, and the debtor acquires rights in the collateral. MCL 440.9203(1),(2); MSA 19.9203(1), (2); *Yamaha,* at 277.

John Deere Company was required to file a financing statement, which it did on August 7, 1985. MCL 440.9302; MSA 19.9302. When a financing statement is filed prior to attachment, the security interest is perfected at the time it attaches. MCL 440.9303(1); MSA 19.9303(1).

John Deere Company's security interest did not attach until August 15, 1985, because an agreement was not reached until that date and value was not given until that date. A security agreement usually only requires a debtor's signature in order to be considered an agreement for attachment purposes, unless the agreement postpones the time of attaching. MCL 440.9203(1)(a), (2); MSA 19.9203(1)(a), (2). Deere Company's loan contract and security agreement was worded as an application for financing from the Deere Company and was conditioned upon acceptance by Deere. This contract was not accepted by Deere Company until August 15, 1985, when a company agent

signed it. Thus, an agreement was not reached until August 15, 1985. Since the loan contract was not approved by Deere Company until August 15, financing for the combine and platform was not provided until this date. Thus, value was not given until August 15, 1985.

Deere Company argues that the loan contract and security agreement were accepted by performance before the August 15 signing date. This claim is not supported by the evidence presented at trial. Although Laethem Farm Service Company did deliver the equipment in question to Sam Ritter prior to Deere Company's signing, based upon the assumption that Deere Company would provide financing, Laethem was not an agent of John Deere Company and was not authorized to enter into agreements or contracts for Deere. Deere Company's contract specifically conditioned Ritter's financing upon acceptance by the Deere Company, and Deere's agent's accepting signature was dated August 15, 1985. Ambiguities in the loan contract and security agreement must be construed against Deere Company, which drafted it. *Federal Land Bank of St Paul v Bay Park Place, Inc,* 162 Mich App 1, 7; 412 NW2d 222 (1987). Deere Company's contract was conditioned upon acceptance by a company agent, so Deere cannot now claim that it accepted by performance contrary to the terms of its own contract.

John Deere Company's purchase money security interest in the combine and platform did not attach within twenty days after Sam Ritter took possession of the equipment. Deere Company's security interest does not qualify for special priority under MCL 440.9312(5); MSA 19.9312(5). Thus, since NBD-Sandusky Bank's security interest was first perfected, it has priority. MCL 440.9312(6); MSA 19.9312(6).

Affirmed.

S. B. Miller, J., concurred.

MacKenzie, J. *(dissenting).* I disagree with the majority's conclusion that John Deere did not give value until its representative signed the loan contract and security agreement on August 15. The record indicates that immediately after Ritter signed the contract and security agreement on July 31, Laethem received a retail note credit from John Deere and thus received its money for Ritter's purchase of the equipment. I am of the opinion that this transaction constitutes the giving of value by John Deere.

Even if the trial court and the majority are correct that attachment and perfection of John Deere's purchase money security interest did not occur until August 15, in my view both have committed a fundamental error of law by assuming that such perfection was untimely for purposes of determining priority. I believe that both the trial court and the majority have incorrectly assumed that, for UCC Article 9 purposes, John Deere had twenty days from July 23, the day Ritter took delivery of the equipment, in which to perfect.

The basic issue in this case is whether the security interest of NBD-Sandusky or of John Deere has priority. Since this case involves a purchase money security interest, the time Ritter took "possession" of the equipment is crucial; under § 9-312, MCL 440.9312(5); MSA 19.9312(5), it is the benchmark for determining whether John Deere timely perfected its security interest in order to assert priority:

(5) A purchase money security interest in collat-

eral other than inventory has priority over a conflicting security interest in the same collateral or its proceeds *if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within 20 days thereafter.* [Emphasis added.]

Thus, if John Deere's purchase money security interest was perfected no later than twenty days after "the debtor receive[d] possession of the collateral," it has priority over the security interest of NBD-Sandusky.

In a typical purchase money situation, a seller extends credit to a buyer/debtor or a lender advances the money to enable the buyer/debtor to purchase the collateral, and the buyer/debtor then acquires the collateral. The loan transaction is completed, followed by the transfer of the collateral to the debtor. This case does not present a typical purchase money situation, however. In this case, the subject equipment was delivered to Ritter *before* he made his loan application and the application was accepted by the purchase money lender. The cases considering such "inverse" purchase money transactions are nearly unanimous in holding that, where the debtor has received the goods to be purchased prior to the extension of credit or advancement of money, he is *not* a "debtor in possession of collateral" under UCC § 9-312 *until the execution of a loan commitment,* giving the purchase money lender twenty days from the loan commitment date to perfect.

*Brodie Hotel Supply, Inc v United States,* 431 F2d 1316 (CA 9, 1970), was the first decision to recognize that under UCC § 9-312 "possession" depends not on physical control over the property to be purchased, but on the time the debtor/creditor relationship arises. In *Brodie,* the seller of certain restaurant equipment allowed the future pur-

chaser to take over use of the equipment in June, 1964. On November 2, 1964, the buyer borrowed money from a bank using the equipment as security. The bank filed its financing statement on November 4, 1964, and subsequently assigned the loan to the Small Business Administration. On November 12, 1964, the equipment buyer executed a chattel mortgage on the equipment in favor of the seller and the seller gave the buyer a bill of sale. The seller filed a financing statement on November 23, 1964. In an ensuing priority dispute between the Small Business Administration and the equipment seller, the seller contended that it was entitled to priority under § 9-312. The *Brodie* court agreed. The court began its analysis by noting that under § 9-312, a purchase money security interest, to have priority, must be perfected after a "debtor" receives possession of "collateral." UCC § 9-105(1)(d) defines "debtor" as "the person who owes a payment or other performance of the obligation secured, whether he owns or has rights in the collateral." The *Brodie* court reasoned that because the buyer did not become obligated to the seller to pay the equipment purchase price until he executed the chattel mortgage on November 12, 1964, the buyer did not become a "debtor" until that date. Moreover, the equipment could not become "collateral" for the unpaid purchase price until the obligation to pay the purchase price arose, again November 12. See UCC § 9-105(1)(c). The *Brodie* court thus concluded that since the seller filed its financing statement within the statutorily required time period after "the debtor receive[d] possession of the collateral"—November 12—the seller's purchase money security interest had priority over the bank's earlier security interest under § 9-312. This was so even though the buyer had had physical possession of the equipment since the previous June.

The *Brodie* court's construction of § 9-312 was reiterated in *In re Ultra Precision Industries, Inc,* 503 F2d 414 (CA 9, 1974). In that case, Ultra executed a chattel mortgage on its after-acquired property in favor of National Acceptance Corporation on March 3, 1967. On April 30 and June 30, 1968, Ultra took delivery of two machines from Wolf Machinery Company. The agreement between Wolf and Ultra allowed Ultra to test the machines for a reasonable period. Ultra accepted the machines and executed purchase money loan documents covering them on July 31, 1968. Wolf filed a financing statement on August 5. A third machine was delivered to Ultra on August 7, 1968. It was accepted and loan documents were executed on October 23, 1968. Wolf filed a financing statement the following October 30. After Ultra declared bankruptcy, National claimed priority under its 1967 security agreement, contending that Ultra became a "debtor" when the machines were delivered and that Wolf could not assert priority under § 9-312 because it had not filed its financing statement within the allowable time after each delivery. The *Ultra* court disagreed. Recognizing that "Ultra held no assignable legal interest in the machines which could fall into the grasp of National's after-acquired property security clause" until Ultra was committed to receiving and repaying the purchase money (i.e., became a "debtor"), the court concluded that Ultra was in "possession of the collateral" not on the dates it received the machines, but on the dates it became obligated to Wolf. *Ultra,* at 417. Since Wolf perfected its purchase money security interest by filing its financing statements within the time period set forth in § 9-312, its interest took priority over National's earlier security interest.

Other cases considering the issue are in accord.

See *State Bank & Trust Co of Beeville v First Nat'l Bank of Beeville*, 635 SW2d 807 (Tex App, 1982); *Ford Motor Credit Co v First State Bank of Smithville*, 674 SW2d 443 (Tex App, 1984); *International Harvester Co v Bank of California, N A*, 29 Wash App 905; 632 P2d 522 (1981); *Rainier National Bank v Inland Machinery Co*, 29 Wash App 725; 631 P2d 389 (1981); *Commerce Union Bank v John Deere Industrial Equipment Co*, 387 So 2d 787 (Ala, 1980). See also *In re Automated Bookbinding Services, Inc*, 471 F2d 546 (CA 4, 1972), p 553, n 14. And see generally 2 White & Summers, *Uniform Commercial Code 3d ed*, § 26-5, p 514, n 29. Cf. *North Platte State Bank v Production Credit Ass'n of North Platte*, 189 Neb 44; 200 NW2d 1 (1972); *Mark Products U S, Inc v Interfirst Bank Houston, N A*, 737 SW2d 389 (Tex App, 1987).

Applying the above decisions to the instant case, it is readily apparent that Ritter became a "debtor in possession of the collateral" under § 9-312(5) on August 15, when John Deere officially agreed to accept Ritter's loan application, and *not* on July 23 as the majority and trial court assume. Under § 9-312(5), therefore, if John Deere perfected its purchase money security interest in the equipment *on August 15 or twenty days thereafter* it had priority over NBD-Sandusky's security interest. Perfection requires attachment of the security interest and filing of a financing statement. MCL 440.9303(1); MSA 19.9303(1). As the majority concludes, the requisites for attachment, MCL 440.9203(1),(2); MSA 19.9203(1),(2), were undoubtedly met by August 15: Ritter had signed the security agreement, John Deere had given value, and Ritter had an interest in the collateral. Further, filing of the financing statement was accom-

plished before August 15, as permitted by MCL
440.9402(1); MSA 19.9402(1). John Deere's pur-
chase money security interest was therefore per-
fected on August 15, the date the "debtor," Ritter,
received "possession of the collateral." Under MCL
440.9312(5); MSA 19.9312(5), John Deere's security
interest must take priority over NBD-Sandusky's.
The trial court clearly erred in holding to the
contrary. Accordingly, I would reverse.