NBD-SANDUSKY BANK v RITTER

Docket No. 87142. Argued January 9, 1991 (Calendar. No. 5). Decided June 18, 1991.

NBD-Sandusky Bank brought an action in the Sanilac Circuit Court against Sam and Emily Ritter, Laethem Farm Service Company, and the John Deere Company, alleging that under an after-acquired property clause in a security agreement between NBD and the Ritters, its perfected security interest in certain collateral following default by the Ritters had priority under MCL 440.9312(6); MSA 19.9312(6) over John Deere's purchase money security interest in the same collateral. The court, George E. Benko, J., held that NBD's security interest was to be given first priority because John Deere's purchase money security interest was not perfected within the period prescribed by MCL 440.9312(5); MSA 19.9312(5), and thus did not qualify for special priority status. The Court of Appeals, MICHAEL J. KELLY, P.J., and S. B. MILLER, J. (MACKENZIE, J., dissenting), affirmed, holding that NBD's security interest had priority under § 9312(6) (Docket No. 104868). John Deere appeals.

In a unanimous opinion by Justice BOYLE, the Supreme Court *held:*

The language of the relevant provisions of the Uniform Commercial Code and their underlying purpose compel the conclusion that John Deere satisfied the requirements necessary for priority status as a purchase money lender under MCL 440.9312(5); MSA 19.9312(5). Because John Deere perfected its purchase money security interest within twenty days of the date the debtor received the collateral, its purchase money security interest had priority over all competing claims.

1. Resolution of disputes between two commercial lenders over the priority of conflicting perfected security interests in the same collateral is governed by the Uniform Commercial Code. The UCC must be liberally construed and applied to promote its underlying purposes and policies which are to simplify, clarify, and modernize commercial law and to permit the continued expansion of commercial practices through cus-

REFERENCES
Am Jur 2d, Secured Transaction §§ 99 et seq.

tom, usage, and agreement of the parties by making commercial transactions reasonable, liberal, and nontechnical. A priority contest between two parties holding a perfected security interest in the same collateral usually is determined according to which party either was the first to properly file a financing statement or was the first to perfect its security interest in the collateral.

2. Under MCL 440.9312(5); MSA 19.9312(5), a purchase money security interest in collateral has priority over a conflicting security interest in the same collateral if the purchase money security interest is perfected at the time the debtor possesses the collateral or within twenty days. The UCC has a preference for purchase money security interests, but conditions the special priority status by requiring the purchase money security interest holder to cure the ostensible ownership problem that its security interest creates. A purchase money security interest is taken by a person who, by making advances or incurring an obligation, gives value to enable a debtor to acquire rights in or the use of collateral. In this case, John Deere, the lender, paid Laethem, the seller, the amount Mr. Ritter owed under a purchase agreement with Laethem, and received a purchase money security interest in the goods acquired.

3. Perfection is a two-step process requiring that the security interest "attach" and that all applicable steps for perfection be followed; the sequence of events is not determinative. In this case, John Deere, the lender, properly filed a financing statement covering the collateral fifteen days after Ritter took physical possession of the collateral. Attachment occurred when John Deere and Ritter entered into a written security agreement signed by the debtor and describing the collateral, when John Deere "gave value," and when Ritter acquired rights in the collateral.

4. The record indicates that John Deere accepted the loan contract and the security agreement and satisfied the "agreement" element of attachment as of August 7, 1985, the date it filed its financing statement covering the collateral. In so doing, it cured any ostensible ownership problem created by Mr. Ritter's possession of the collateral. The record also indicates that on July 31, 1985, John Deere authorized Laethem to take an immediate credit on its account with John Deere, providing additional evidence of John Deere's acceptance of the agreement by performance, and satisfying the definition of the giving of value. Because John Deere perfected its purchase money security interest by August 7, 1985, within twenty days of the

date the debtor received the collateral, its purchase money security interest has priority over all competing claims.

Reversed and remanded.

179 Mich App 580; 446 NW2d 340 (1989) reversed.

SECURED TRANSACTIONS — PURCHASE MONEY SECURITY INTERESTS — PRIORITY.

A purchase money security interest is taken by a person who, by making advances or incurring an obligation, gives value to enable a debtor to acquire rights in or the use of collateral; a purchase money security interest has priority over a conflicting security interest in the same collateral if it is perfected at the time the debtor possesses the collateral or within twenty days; although the ucc has a preference for purchase money security interests, it conditions the special priority status by requiring the purchase money security interest holder to cure the ostensible ownership problems that its security interest creates (MCL 440.9312[5]; MSA 19.9312[5]).

*Rigney & Hearsch* (by *David W. Hearsch*) for the plaintiff.

*Howard & Howard Attorneys, P.C.* (by *Mark H. Canady*), for the defendant.

BOYLE, J. This appeal involves a dispute over the priority of conflicting security interests held by NBD-Sandusky Bank and John Deere Company in the same collateral. Resolution is governed by the Uniform Commercial Code. MCL 440.1101 *et seq.*; MSA 19.1101 *et seq.*

The Court of Appeals held that John Deere's purchase money security interest in certain farm equipment did not attach and therefore was not perfected until over twenty days after Sam Ritter, the debtor, took possession of the equipment. 179 Mich App 580; 446 NW2d 340 (1989). Thus, since John Deere's perfected security interest failed to qualify for special priority status under MCL 440.9312(5); MSA 19.9312(5), the Court of Appeals held NBD's security interest in the same collateral by virtue of its "after-acquired property" clause

had priority. MCL 440.9312(6); MSA 19.9312(6). We find that John Deere satisfied the requirements necessary for priority status as a purchase money lender under MCL 440.9312(5); MSA 19.9312(5). Thus, we reverse the decision of the Court of Appeals and remand the case to the trial court for entry of judgment in favor of John Deere.

I

### FACTS AND PROCEEDINGS

In May, 1985, Sam and Emily Ritter entered into a security agreement granting NBD-Sandusky Bank a security interest in their farm equipment. The security agreement also contained an "after-acquired property" clause covering equipment purchased by the Ritters in the future. NBD filed a correlating financing statement on May 30, 1985.

In December, 1985, the Ritters entered into three business loan notes with the bank. Under the terms of those agreements, NBD loaned the Ritters a total of $60,917.20. In two of the notes, the Ritters granted NBD a security interest in their farm equipment and any other collateral securing indebtedness of the debtors to NBD-Sandusky Bank. The obligation owed under the remaining note was explicitly secured by the May 28, 1985, security agreement.

In the interim between the May and December transactions with NBD-Sandusky Bank, Sam Ritter, in July of 1985, negotiated the purchase of certain pieces of farm equipment from Laethem Farm Service Company to be financed by John Deere. On July 23, 1985, Sam Ritter executed a purchase order for one used John Deere Model 6600 Diesel Combine, one set of new John Deere bin extensions, and one set of used float springs. On that date, Mr. Ritter also agreed to rent a

John Deere sixteen-foot Quick Tach platform with a view toward purchasing this additional piece of equipment. Sam Ritter took physical possession of the farm equipment that same day.

On July 31, 1985, Mr. Ritter agreed to purchase the sixteen-foot Quick Tach platform and executed three documents, including a second purchase order covering the platform, the Model 6600 Combine, the bin extensions, and the float springs. Mr. Ritter also executed a combination variable rate loan contract and security agreement, stating that he was applying to John Deere for a loan to be used to finance the balance owed on the attached purchase order from Laethem. This agreement specified that "if this Loan Contract is accepted by Lender," Mr. Ritter promised to repay the amount loaned plus a finance charge, and agreed to secure his indebtedness by granting John Deere a security interest in the equipment. Lastly, Mr. Ritter executed a correlating financing statement listing John Deere as the secured party, himself as the debtor, and the John Deere 6600 Combine with bin extensions and float springs, and John Deere sixteen-foot Quick Tach platform as collateral. On the same day, after Mr. Ritter executed these documents, Laethem took an immediate credit on its account with John Deere for the portion of the purchase price that John Deere was to finance. Laethem then mailed these documents to John Deere.

On August 7, 1985, John Deere filed a fully executed financing statement covering the subject equipment with the Sanilac County Register of Deeds. On August 15, 1985, a representative of John Deere signed the loan contract and security agreement.

Subsequently, the Ritters defaulted under their

obligations to NBD, and the bank filed suit against the Ritters, Laethem, and John Deere alleging that its perfected security interest in the subject equipment had priority over all competing claims. At the conclusion of a bench trial in October, 1987, the trial judge, relying on the language of the combination loan contract and security agreement, found that there was no acceptance and thus no agreement to grant John Deere a security interest in the collateral until both Mr. Ritter and a John Deere representative signed the document. The court held that since John Deere's agent did not accept until he signed on August 15, 1985, John Deere's purchase money security interest was not perfected until August 15, 1985. Since this was more than twenty days from the date the debtor received possession of the collateral, the court held that John Deere's perfected security interest failed to qualify for special priority status under MCL 440.9312(5); MSA 19.9312(5). Therefore, the court concluded NBD's security interest in the subject equipment was to be given first priority.

The Court of Appeals affirmed. The majority reasoned that the debtor took possession on July 23, 1985, and that John Deere's security interest did not attach until August 15, 1985, "because an agreement was not reached until that date and value was not given until that date." *Id.* at 583, 586. Thus, since John Deere's purchase money security interest in the subject equipment did not become perfected until over twenty days after Mr. Ritter took possession of the equipment, its security interest did not qualify for the special priority granted under MCL 440.9312(5); MSA 19.9312(5), and NBD's security interest had priority under MCL 440.9312(6); MSA 19.9312(6).

We granted John Deere's application for leave to appeal. 435 Mich 861 (1990).

II

DISCUSSION

This is a priority dispute between two commercial lenders, each holding a perfected security interest in the same collateral. Appellant, John Deere, claims priority as a purchase money lender, and NBD claims priority under its "after-acquired property" clause. Resolution of the dispute is governed by the Uniform Commercial Code. MCL 440.1101 *et seq.*; MSA 19.1101 *et seq.*

The Uniform Commercial Code must be "liberally construed and applied to promote its underlying purposes and policies." MCL 440.1102(1); MSA 19.1102(1). The court is to apply the language under a particular section of the code to further both that section's specific purpose and policies and the general underlying purposes of the code. UCC 1-102(1), Official Comment (1). Two of the code's general purposes are to simplify, clarify, and modernize commercial law and to permit the continued expansion of commercial practices through custom, usage, and agreement of the parties. MCL 440.1102(2)(a), (b); MSA 19.1102(2)(a), (b). One authority has acknowledged that an additional underlying purpose of the code is to make "the law of commercial transactions be, so far as reasonable, liberal and nontechnical." 1 White & Summers, Uniform Commercial Code (3d ed), § 4, p 15.

A priority contest between two parties holding a perfected security interest in the same collateral is usually determined according to which party either was the first to properly file a financing statement covering the subject collateral or was the first to perfect its security interest. MCL 440.9312(6); MSA 19.9312(6). NBD filed its financing statement on May 30, 1985. Thus, unless another

rule applies, the bank's security interest has priority. John Deere claims that it holds a perfected purchase money security interest in the debtor's noninventory collateral and therefore its security interest in the subject farm equipment should enjoy the special priority status granted under MCL 440.9312(5); MSA 19.9312(5).

There is no real dispute that John Deere's security interest falls within the statutory definition of a purchase money security interest since it was

> taken by a person[1] who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used. [MCL 440.9107(b); MSA 19.9107(b).]

Under the three-party transaction involved here, John Deere, as lender, paid Laethem, the seller, the amount Mr. Ritter owed under the purchase agreement with Laethem, and received a purchase money security interest in the goods acquired. The money advanced to Laethem became the purchase money debt, and the acquired goods became the purchase money collateral.

MCL 440.9312(5); MSA 19.9312(5) provides:

> A purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral or its proceeds *if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within 20 days thereafter.* [Emphasis added.]

Thus, the central issue here is whether John Deere complied with the Uniform Commercial

---

[1] John Deere falls within the definition of "person" under MCL 440.1201(30); MSA 19.1201(30).

Code's requirements so as to allow it to enjoy special priority status over competing claimants. The code focuses on two critical dates: when the debtor received possession of the collateral and when John Deere's purchase money security interest was perfected. In addition to these requirements, we recognize both the code's preference for purchase money security interests as evidenced in §§ 9301(2), 9312(4), and 9312(5)[2] and its condition that, in order to enjoy special priority status, the purchase money security interest holder must cure the ostensible ownership problem that its security interest creates shortly after the problem arises. UCC. 9-312, Official Comment (3). See *In re Automated Bookbinding Services, Inc*, 471 F2d 546, 552 (CA 4, 1972).

It is uncontested that Mr. Ritter received physical possession of the farm equipment on July 23, 1985. Thus, we turn to the date John Deere perfected its purchase money security interest in the subject equipment.[3] Perfection is a two-step process requiring that the security interest "attach" and that all the applicable steps for "perfection" have been taken. The sequence of events is not determinative. MCL 440.9303(1); MSA 19.9303(1) specifically provides "[i]f such steps [for perfection] are

[2] Several rationales support the code's preferred treatment of purchase money security interests: (1) under precode law, purchase money lenders were given special priority, (2) the scheme gives the debtor greater bargaining power and protects the debtor from being limited to acquiring credit from the first creditor to file a financing statement covering similar goods, and (3) it promotes sales by providing an incentive for creditors by giving first priority in instances where their money makes the acquisition possible. 2 White & Summers, Uniform Commercial Code (3d ed), § 26-5, p 504.

[3] The priority dispute involved in this appeal is resolved by this Court's determination of the date John Deere's purchase money security interest was perfected. Therefore, we find it unnecessary to address the alternate argument raised by John Deere and the dissenting judge in the Court of Appeals concerning the date the debtor received possession of the collateral. We express no view on the merits of that issue.

taken before the security interest attaches, it is perfected at the time when it attaches."

John Deere complied with the second step in this process by filing a properly executed financing statement covering the subject equipment with the Sanilac County Register of Deeds on August 7, 1985. MCL 440.9302, 440.9401(1)(a); MSA 19.9302, 19.9401(1)(a). The filing was made fifteen days after the debtor took physical possession of the collateral. Thus, we can further narrow our inquiry to the date John Deere's purchase money security interest attached.

"Attachment" is a term of art used in the code to identify the steps necessary to create a security interest that is enforceable against the debtor. In this case, John Deere (the secured party) did not have possession of the collateral. Therefore, four steps were necessary for its security interest to "attach" to the collateral. John Deere was required to: (1) enter into a "security agreement" with the debtor, (2) reduce the agreement to a writing signed by the debtor and containing a description of the collateral, and (3) give value, and the debtor was required to (4) have rights in the collateral. MCL 440.9203(1)(a)-(c); MSA 19.9203(1)(a)-(c). As soon as all these events took place, attachment occurred unless the parties explicitly agreed to postpone the time of attaching. MCL 440.9203(2); MSA 19.9203(2).

The Court of Appeals focused on the language of the parties' loan contract and security agreement and held that the "agreement" and "value" elements of "attachment" were not satisfied until August 15, 1985, the date the document was executed by a John Deere representative. The Court emphasized that the document was worded as an application for financing, was conditioned upon John Deere's acceptance, and John Deere's signa-

ture clause was prefaced with the words "accepted by" and contained a space for an authorized signature and date. 179 Mich App 586.

In reaching its conclusion, the Court rejected John Deere's argument that the loan contract and security agreement was accepted by performance, finding that the claim was unsupported by the evidence presented at trial. Finally, in support of its decision, the Court stated that

> [a]mbiguities in the loan contract and security agreement must be construed against Deere Company, which drafted it [and] Deere cannot now claim that it accepted by performance contrary to the terms of its own contract. [179 Mich App 587.]

In other words, the Court reached its conclusion that there was no "agreement" or "value given" until August 15, 1985, by strictly construing the loan contract and security agreement against John Deere.

John Deere does not dispute that the loan contract and security agreement was conditioned upon its acceptance. It argues, however, that the document did not specify the method of acceptance and that it accepted by performance earlier than the August 15, 1985, signature date. It argues that the Court of Appeals erred when it stated this claim was not supported by the evidence presented at trial. We agree.

The code's definition sections provide the necessary guidance for establishing the date the parties reached an agreement to create a security interest and the date John Deere "gave value."

MCL 440.9105(1)(l); MSA 19.9105(1)(l) defines a security agreement as: "an agreement which creates or provides for a security interest." For guidance regarding the nature of the "agreement"

between the parties, we look to how that term is defined. MCL 440.1201(3); MSA 19.1201(3) provides:

> "Agreement" means the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance as provided in this act (sections 1205 and 2208).

We have considered the parties' written security agreement and the course of performance and course of dealing testimony presented at trial, and find the parties' "bargain in fact" was that John Deere could accept by performance and that it did so earlier than the August 15, 1985, signature date on the loan contract and security agreement.

First, we underscore that the loan contract and security agreement document does not specify a method of acceptance, i.e., that it may only be accepted by John Deere's signature on the document. Second, we find convincing the uncontroverted testimony presented at trial which established that it is John Deere's practice to accept a security agreement prior to the date the financing statement is filed.[4] John Deere filed its financing statement on August 7, 1985. Thus, we conclude that John Deere both "accepted" the loan contract and security agreement and satisfied the "agreement" element of attachment as of August 7, 1985. Moreover, when John Deere filed its financing statement, it cured any ostensible ownership problem created by Mr. Ritter's possession of the collateral. Consequently, there is no reason not to

[4] The Court of Appeals erred when it failed to consider the testimony of the John Deere representative concerning the parties' agreement. Instead it focused on Laethem's testimony, and then dismissed that evidence on the basis that Laethem was not an agent of John Deere and thus was not authorized to enter into agreements for Deere.

give effect to the Uniform Commercial Code's policy favoring purchase money security interests.

The record also indicates that on July 31, 1985, John Deere authorized Laethem to take an immediate credit on its account with John Deere. This is additional evidence of John Deere's acceptance of the agreement by performance. It is also uncontroverted evidence that John Deere "gave value" as required under MCL 440.9203(1)(b); MSA 19.9203(1)(b). By allowing Laethem to take a credit off its account, John Deere satisfied the definition of "value." MCL 440.1201(44)(a) and (d); MSA 19.1201(44)(a) and (d) provide that a party gives "value" when it gives "a binding commitment to extend credit" or it gives "any consideration sufficient to support a simple contract." See *In re Reliable Mfg Corp,* 703 F2d 996, 1000 (CA 7, 1983). Thus, we agree with Judge MACKENZIE's conclusion in her dissenting opinion in the Court of Appeals that

> [t]he record indicates that immediately after Ritter signed the contract and security agreement on July 31, Laethem received a retail note credit from John Deere and thus received its money for Ritter's purchase of the equipment [and] this transaction constitutes the giving of value by John Deere. [*NBD-Sandusky Bank, supra* at 588.]

### CONCLUSION

The language of the relevant provisions of the Uniform Commercial Code and their underlying purpose compel the conclusion that John Deere gave value on July 31, 1985, and accepted the loan contract and security agreement at least by August 7, 1985. Thus the "value" and "agreement" elements necessary for attachment were

satisfied by August 7, 1985. Consequently, John Deere's purchase money security interest both attached and was perfected by that date. Since John Deere perfected its purchase money security interest within twenty days from the date the debtor received the collateral, we hold that its purchase money security interest should be given priority over all competing claims.

We reverse the decision of the Court of Appeals and remand the case to the trial court for entry of judgment in favor of John Deere.

CAVANAGH, C.J., and LEVIN, BRICKLEY, RILEY, GRIFFIN and MALLETT, JJ., concurred with BOYLE, J.