NBD BANK, NA v TIMBERJACK, INC

Docket No. 154691. Submitted August 2, 1994, at Grand Rapids. Decided December 20, 1994, at 9:10 A.M.

NBD Bank, N.A., brought an action in the Kent Circuit Court against Cedar Springs Tractor & Equipment Company, Timberjack, Inc., and others, seeking possession of collateral to satisfy the indebtedness of Cedar Springs Tractor. The court, Robert A. Benson, J., issued a restraining order prohibiting Cedar Springs Tractor, a dealer of logging equipment manufactured by Timberjack, from disposing of farm and logging equipment in its inventory. Despite the restraining order, Cedar Springs Tractor voluntarily returned some inventory to Timberjack. The plaintiff added a count of claim and delivery against Timberjack. Timberjack filed a counterclaim alleging that it had a valid prior perfected security interest in the collateral and proceeds. Timberjack perfected a security interest in the products it supplied to Cedar Springs Tractor by filing a financing statement with the office of the Secretary of State on December 27, 1971. Timberjack's first continuation statement was filed six months and five days before the expiration of the five-year term of the financing statement. Subsequent continuation statements referred back to the original financing statement. The plaintiff's financing statement covering all of the assets of Cedar Springs Tractor was recorded on June 4, 1984, and a continuation statement was filed on April 19, 1989. The court granted summary disposition for the plaintiff, holding that Timberjack lost its status as a perfected secured creditor because it filed its first continuation statement six months and five days before the five-year period of the original financing statement was due to expire, rather than within six months before the expiration of the five-year period of the original financing statement as set forth in MCL 440.9403(3); MSA 19.9403(3). Timberjack appealed.

The Court of Appeals *held*:

1. The use of the word "may" in the requirement of § 9403(3) that a "continuation statement may be filed by the secured party" within six months before the five-year period of a financing statement is to expire makes permissive the continuation by a secured creditor of its interest in the collateral

covered by a financing statement. However, it is clear that the Legislature did not intend the time limits for filing a continuation statement to be permissive if a secured party decides to file a continuation statement. Furthermore, § 9403 is part of the Uniform Commercial Code and, thus, should be construed to ensure consistency among the various states. Courts of other jurisdictions uniformly have held that a continuation statement filed before the six-month period preceding the date on which the five-year period of a financing statement is to expire is not timely and cannot have the effect of continuing the original financing statement.

2. Substantial compliance with the filing requirement of continuation statements is not sufficient to permit continuation of a financing statement in the absence of a showing that the filing officer who accepted the filing affirmatively induced the secured party to believe that the filing satisfied the filing requirement. Because Timberjack has not alleged that any policy or action of the office of the Secretary of State caused it to believe that its filing of its first continuation statement was in compliance with the statutory requirements, it is not entitled to equitable relief from the results of its noncompliance with that filing requirement. Accordingly, the trial court was correct in finding that Timberjack's premature filing of the continuation statement invalidated its status as a perfected secured creditor.

3. The fact that the plaintiff's 1989 continuation statement was filed in plaintiff's present name rather than in its former name, Union Bank & Trust, under which the financing statement had been filed does not make the continuation statement deficient. A secured party that changes its name is not required to file a new or amended financing statement to reflect the name change. Accordingly, a secured party is not required to file with its continuation statement made in its new name a written statement showing an assignment of the interest in the collateral covered by the financing statement from its former name to its current name. The plaintiff's 1989 continuation statement in its present name without any statement of assignment was sufficient.

Affirmed.

*Clary, Nantz, Wood, Hoffius, Rankin & Cooper* (by *Daniel R. Kubiak*), for the plaintiff.

*Butzel Long* (by *Edward M. Kalinka*), for Timberjack, Inc.

Before: HOOD, P.J., and MARILYN KELLY and J. L. MARTLEW,* JJ.

PER CURIAM. This case involves a priority battle between two secured creditors' interest in the same collateral. Defendant Timberjack, Inc., appeals the trial court's order granting partial summary disposition in favor of plaintiff, NBD Bank, N.A., pursuant to MCR 2.116(C)(10). The trial court determined that Timberjack lost its status as a perfected secured creditor when it filed a premature continuation statement concerning the subject collateral. We affirm.

Timberjack, formerly Eaton-Yale, Ltd., is a Canadian corporation that manufactures logging and forestry equipment. In 1971, Cedar Springs Tractor & Equipment Company became a dealer of Timberjack products. Pursuant to the dealership agreement, Timberjack was granted a security interest in the products it delivered to Cedar Springs and the proceeds of the sales of those products. On December 27, 1971, Timberjack perfected its security interest by filing a financing statement with the office of the Secretary of State. The financing statement was due to expire five years from the date of filing. Timberjack filed its first continuation statement six months and five days before the expiration of the term of the financing statement. Subsequent continuation statements that referenced the original financing statement were also filed by Timberjack through 1986.

Subsequently, Cedar Springs entered into a loan agreement with NBD Bank, N.A., then known as Union Bank & Trust Company. The financing statement accompanying the loan granted the bank a blanket security interest in all of Cedar

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Springs' assets. The bank recorded its financing statement on June 4, 1984. A timely continuation statement was filed by the bank on April 19, 1989. Cedar Springs ultimately failed to satisfy its obligation to the bank, and the bank instituted an action seeking possession of the collateral to satisfy the indebtedness. The circuit court issued a restraining order prohibiting Cedar Springs from disposing of any farm implements and logging equipment in its inventory. Despite the restraining order, Cedar Springs voluntarily returned certain inventory to Timberjack. The bank then amended its complaint to add a count of claim and delivery against Timberjack.

Timberjack filed a counterclaim alleging that the bank improperly sought to seize the collateral and proceeds from Cedar Springs. Timberjack alleged that it had a valid prior perfected security interest in the collateral and proceeds. Competing motions for summary disposition were filed. The trial court determined that Timberjack lost its status as a perfected secured creditor because it filed the first continuation statement six months and five days before the five-year period of the original financing statement was due to expire.

Timberjack first argues that its status as a perfected secured creditor of Cedar Springs was not defeated because it filed the first continuation statement six months and five days before the five-year period of the original financing statement was due to expire. We disagree.

It is well settled that the Uniform Commercial Code must be liberally construed and applied to promote the code's underlying purposes and policies. MCL 440.1102(1); MSA 19.1102(1); *NBD-Sandusky Bank v Ritter*, 437 Mich 354, 360; 471 NW2d 340 (1991). The purpose of the various Uniform Codes is to promote consistency among

the various states and to further coherence in the business law of this nation. *Citizens Bank v Ansley,* 467 F Supp 51, 55 (MD Ga, 1979), aff'd 604 F2d 669 (CA 5, 1979).

In 1976, when Timberjack's first continuation statement was filed, MCL 440.9403; MSA 19.9403, provided in relevant part:

> (2) A filed financing statement which states a maturity date of the obligation secured of 5 years or less is effective until the maturity date and thereafter for a period of 60 days. Any other filed financing statement is effective for a period of 5 years after the date of filing. The effectiveness of a filed financing statement lapses on the expiration of the 60-day period after a stated maturity date or on the expiration of the 5-year period, unless a continuation statement is filed before the lapse. Upon lapse the security interest becomes unperfected. A filed financing statement which states that the obligation secured is payable on demand is effective for 5 years after the date of filing.
>
> (3) *A continuation statement may be filed by the secured party (i) within 6 months before and 60 days after a stated maturity date of 5 years or less, and (ii) otherwise within 6 months before the expiration of the 5-year period specified in subsection (2). . . . Upon timely filing of the continuation statement, the effectiveness of the financing statement is continued for 5 years after the last date to which the filing was effective whereupon it lapses in the same manner as provided in section (2)* unless another continuation statement is filed before the lapse. Succeeding continuation statements may be filed in the same manner to continue the effectiveness of the financing statement.

Timberjack claims that the word "may" as employed in the statute is permissive, and it was therefore entitled to file the continuation statement before the six-month period referenced

above. According to Timberjack, at the very least it "substantially complied" with the requisites of the statute because the bank was put on notice of its security interest in the collateral at issue.

We first note that there is no ambiguity in the word "may" as employed in the phrase "may be filed . . . within 6 months before the expiration of the 5-year period." To the contrary, this usage indicates that a secured party may, if it so desires, elect to continue its status as a perfected secured creditor by filing a continuation statement. On the other hand, if the secured party, because of satisfaction of indebtedness or for other reason, elects not to continue its status as a perfected secured party, it may choose not to file a continuation statement. In this context the word "may" provides a secured creditor with the option to continue its interest in collateral covered by a financing statement. If, as suggested by Timberjack, the Legislature had utilized the phrase "*shall* file a continuation statement within 6 months," the provision at issue would be misleading in that secured parties who have filed financing statements seemingly would be *obligated* to file continuation statements, despite the fact that they might not be interested in retaining their status as perfected secured creditors. Clearly, the Legislature did not intend such a result. Further, Timberjack's urged interpretation would render meaningless the "6 months" language employed by the Legislature. This Court will avoid a construction that would render a statute, or any part of it, surplusage or nugatory. *Altman v Meridian Twp,* 439 Mich 623, 635; 487 NW2d 155 (1992).

Additionally, the courts of various states have been called on to construe statutory language identical or substantially similar in all material respects to the language of the provision at issue

here. These courts have uniformly held that a continuation statement filed *before* the six-month period is not timely and cannot have the effect of continuing the effectiveness of the original financing statement. See *Banque Worms v Davis Construction Co, Inc,* 831 SW2d 921, 922-924 (Ky App, 1992); *Lorain Music Co v Allied Investment Credit Corp,* 41 Ohio App 3d 235, 236; 535 NE2d 345 (1987); *In re Callahan Motors, Inc,* 396 F Supp 785, 788-789 (D NJ, 1975), rev'd on other grounds 538 F2d 76 (CA 3, 1976). We take guidance from these decisions so as to ensure consistency among the various states and to further coherence in the business law of this nation. *Ritter, supra,* 437 Mich 360; *Ansley, supra,* 467 F Supp 55. Therefore, we conclude that the trial court was correct in finding that Timberjack's premature filing of the continuation statement invalidated its status as a perfected secured creditor.

For the same reasons, we reject Timberjack's claim that it "substantially complied" with the requirements of the statute because the continuation statement was filed a mere five days prematurely. We note that Timberjack has failed to cite any legal authority for the proposition that the principle of substantial compliance cures an untimely filing of a continuation statement. Moreover, it is clear that the filing error was not minor, despite the fact that the bank may have had actual notice of Timberjack's secured interest. As stated in *Bostwick-Braun Co v Owens,* 634 F Supp 839, 841 (ED Wis, 1986):

> All courts which have decided the issue agree that, since the purpose of statutory filing requirements is, in most instances, to resolve notice disputes consistently and predictably by reference to constructive or statutory notice alone, U.C.C. § 9-403(3) precludes consideration of a junior creditor's

actual notice of a now lapsed prior filing by a competing senior creditor.

The statute at issue provides that a continuation statement may be filed *within 6 months before and 60 days after the stated maturity date of a financing statement.* The statute is clear concerning the time frame for filing a continuation statement, and, thus, strict compliance is necessary. To hold otherwise would undercut the goals of consistency and predictability sought to be achieved by the Legislature in enacting this provision, which seeks to resolve notice disputes similar to the instant one.

We also reject Timberjack's equity-based argument, which relies on *In re Callahan Motors, Inc,* 538 F2d 76 (CA 3, 1976). Timberjack's reliance on *Callahan Motors* is misplaced for the following reasons: First, the decision in *Callahan Motors* is limited to the facts of that case. *Id.* at 80. Second, the court in *Callahan Motors* expressly declined to adopt a general rule that the acceptance of a continuation statement by a filing officer cures an untimely presentation. *Id.* at 79. Third, and perhaps most importantly, the court in *Callahan Motors* concluded that equity would provide relief for the bank in that case, not because the filing officer had engaged in a simple acceptance of the continuation statement and filing fee, but because an affirmative course of conduct on the part of the filing officer caused the imperfection in filing. *Id.*

In this case, both in the lower court and in its appellate brief, Timberjack only alleged facts that establish a mere acceptance of its filing and its filing fee. Timberjack did not allege that in 1976 it was the policy of the office of the Michigan Secretary of State to refuse to accept for filing and to return as unfiled continuation statements that

were determined to be premature. Timberjack also did not allege any conduct on the part of the Secretary of State that could be determined to constitute an affirmative course of conduct, within the meaning of *Callahan Motors,* upon which Timberjack reasonably could rely. Finally, Timberjack failed to provide any legal authority from which it could be inferred that the Secretary of State was under a legal obligation to determine whether Timberjack's filing was timely.

For these reasons, the trial court correctly granted the bank's motion for summary disposition pursuant to MCR 2.116(C)(10) with respect to the issue whether Timberjack's premature filing of its 1976 continuation statement effectively continued the perfected status attending the 1971 financing statement.

We also find unpersuasive Timberjack's contention that the bank's 1989 continuation statement was deficient because the bank failed to attach a written statement of assignment to the filing. Timberjack correctly points out that the bank's original financing statement listed Union Bank & Trust as the secured party. Likewise, Timberjack also correctly points out that the bank's 1989 continuation statement listed the bank (NBD Bank, N.A.), and not Union Bank & Trust, as the secured party. Timberjack argues that pursuant to MCL 440.9403(3); MSA 19.9403(3), the bank was required to attach a written statement of assignment to its continuation statement, because it was a person other than the secured party of record, Union Bank & Trust.

It is clear from the record that Union Bank & Trust and NBD Grand Rapids, N.A., were not entities operating in separate and legally distinct capacities. To the contrary, NBD Grand Rapids, N.A., was actually Union Bank & Trust operating

under a new name. A secured party that changes its name is not required to file either a new financing statement or an amended financing statement to reflect the name change. See *In re Wilco Forest Machinery, Inc,* 491 F2d 1041 (CA 5, 1974). Thus, we believe that if the code does not require a secured party operating under a new name to amend or refile a financing statement to reflect the name change, it would also not be necessary to require the newly renamed secured party to file a written statement of assignment with its continuation statement. Accordingly, we conclude that the bank was not required to file a written statement of assignment with its 1989 continuation statement.

The trial court's order granting summary disposition in favor of the bank is affirmed.